ROSELLA A. ROCKWELL *vs.* HAMBURG-BREMEN FIRE INSURANCE COMPANY.

SAME *vs.* SUN INSURANCE OFFICE.

SAME *vs.* DORCHESTER MUTUAL FIRE INSURANCE COMPANY.

SAME *vs.* NEW HAMPSHIRE FIRE INSURANCE COMPANY.

SAME *vs.* CONCORDIA FIRE INSURANCE COMPANY.

SAME *vs.* COMMERCIAL UNION ASSURANCE COMPANY.

SAME *vs.* DELAWARE INSURANCE COMPANY.

Berkshire.    September 12, 1911. — June 19, 1912.

Present: RUGG, C. J. MORTON, HAMMOND, LORING, BRALEY, SHELDON, & DeCOURCY, JJ.

*Insurance*, Fire.    *Agency*, Scope of authority.    *Waiver*.    *Practice, Civil*, Report. *Words*, "Facts."

Where the judge who presided at a trial, after the jury under his direction have returned a verdict for the defendant, reports the case to this court and the report states as one question to be determined, whether "upon the facts" the ruling of the judge was correct, the word "facts" will be taken to include not only facts stated in the report as undisputed but also evidence stated in the report as to facts in dispute.

Seven policies of fire insurance of the standard form prescribed by R. L. c. 118, § 60, covering a certain building were tried together and there was evidence tending to show that, a loss having occurred under the policies, the companies within six days thereafter sent persons called "special agents" to the premises for the purpose of agreeing with the insured "upon the amount of loss," or, failing in that, "to have such amount determined by referees" in accordance with the provisions in the policy. One of such persons, in the presence of the others, in substance stated to the insured that the companies would not require him to make the sworn statement required of him by the policy after a loss, and consequently the insured never rendered the statement. The plaintiff contended that the requirement of the sworn statement was waived. *Held*, that

there was no evidence that the "special agents" had any authority to waive such requirement on behalf of the defendants.

Where, after a loss under a fire insurance policy of the standard form prescribed by R. L. c. 118, § 60, the parties fail to agree upon the amount of loss and an agreement of reference under the terms of the policy is signed by them which provides that "neither this submission nor the award of said referees shall in any way affect any other question than the amount of the aforesaid loss or damage, nor waive nor impair any right of any party hereto," the insurance company by proceeding with the arbitration does not waive the requirement in the policy of a sworn statement signed and sworn to by the insured to be rendered to the company forthwith after the loss setting forth certain details as to the nature and use made of the property insured, the insured's interest therein, other insurance thereon, and the time and cause of the fire.

The owner of a building insured against fire under a policy in the form prescribed by R. L. c. 118, § 60, after a fire causing a loss under the policy failed to render to the company the statement under oath required by the policy. The parties having failed to agree on the amount of the loss, that question was referred to arbitrators under the terms of the policy. The report of the arbitrators was not recognized by the company as valid. Correspondence then occurred between the attorneys for the parties in which, in reply to a letter from the insured's attorney demanding payment and threatening suit, the company's attorney wrote that there had been "No arbitration of the amount of" loss, and that no loss was "as yet payable to [the insured], if any liability exists on the part of" the company, and, in reply to the threat of suit, that the company would "rely upon all" its "legal rights in the premises." In a later letter, in response to an inquiry by the insured's attorney, the company's attorney merely stated why the referee's proceedings were not satisfactory to it and suggested a new arbitration, and there was no withdrawal of the language of his previous letter. *Held*, that there was not in such correspondence any evidence of waiver by the company of the requirement in the policy of the sworn statement above described.

HAMMOND, J.   These are seven actions upon seven policies of fire insurance, all tried together before a jury. Each policy was in the standard form prescribed by R. L. c. 118, § 60, and each contained the following provision: "In case of any loss or damage under this policy, a statement in writing, signed and sworn to by the insured shall be forthwith rendered to the company, setting forth the value of the property insured, the interest of the insured therein, all other insurance thereon, in detail, the purposes for which and the persons by whom the building insured, or containing the property insured, was used, and the time at which and the manner in which the fire originated, so far as known to the insured."

At the trial it appeared that no such statement was given, and in each case the defendant relied upon that fact as one of the

grounds of defense. The plaintiff relied upon waiver. In each case a verdict was ordered for the defendant, and the cases are before us upon the report of the trial judge.* One of the questions is whether "upon the facts" the jury would have been warranted in finding a waiver. We understand the word facts used in this connection to include not only the undisputed facts but also the evidence as to the facts in dispute, or in other words that the question is whether upon the whole evidence as reported the jury would have been warranted in finding a waiver.

The plaintiff seeks to find evidence of waiver in the proceedings instituted for the purpose of ascertaining the amount of loss. These proceedings took place in compliance with another provision contained in each policy, which reads as follows: "In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons, to be named by the other, and the third being selected by the two so chosen; the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference unless waived by the parties shall be a condition precedent to any right of action in law or equity to recover for such loss."

It is well to note in this connection the nature of the sworn statement required by the policy and its relation to the question of damages. It must set forth (1) the value of the property insured, (2) the interest of the insured therein, (3) all other insurance thereon, in detail, (4) the purposes for which and the persons by whom the building insured, or containing the property insured, was used, and (6) the time at which and the manner in which the fire originated so far as known to the insured. It is manifest that with the exception of the value of the property this statement would have no bearing whatever upon the single question of the loss or damage caused by the fire, but it is equally plain that the statement may have a very material bearing upon whether the insured has complied with all the many provisions of the policy material on the question of liability, or in other words whether the defendants were answerable for such loss.

---

* *Fessenden,* J.

*J*

It is a statement having only the most remote relation to the amount of loss, and bearing almost exclusively upon the question of liability.  On the contrary the provision under which the proceedings under consideration took place concerns in no way the question of liability but simply the amount of damage which the insured has suffered, and which the insurer, if liable at all, must pay.  Speaking generally, the first clause concerns only the question of liability, the second only that of the amount of loss.

It is to be noted also that the several persons who went to the store six days after the fire do not appear to have been the general agents of any of the defendant companies.  On the contrary they are described as special agents.  They went there for the purpose of agreeing with the insured "upon the amount of loss," or failing such an agreement, "to have such amount determined by referees" in accordance with the terms of the policy.  That was their errand and they had no other.  Whether the defendants had any ground upon which to contest their liability upon the policy, or whether having it they would waive it, was something about which these agents had no duty to perform nor power to act.  In this respect the cases before us differ widely from cases like *Little* v. *Phœnix Ins. Co.* 123 Mass. 380, upon which the plaintiff relies.  Their representations as to the attitude of the defendants on the question of liability were outside the scope of their agency, were not the representations of the defendants, and the defendants are not answerable for them.  And this is true of the remarks said to have been made to the plaintiff's agent by Burns, a special agent of one of the defendants, in the presence of the other special agents, to the effect that the plaintiff need not make out the sworn statement required by the first clause hereinbefore quoted, and that "the insurance companies understand your case and the agents who represent them, you have notified them and what you have got to do is to select three men and we select three men, you select one of our three men and we select one of your three men, and whatever decision they arrive at shall be final."  It is to be noted that so far as respects the question of settling the amount of loss, which was the only one with which these agents were concerned, these remarks contained an accurate description of the proceedings to be instituted after a failure to agree.  But even if they went further and by a fair interpretation contained a statement that the defend-

ants would not require the sworn statement above named, they were entirely unauthorized for grounds above stated and are not shown to have been known to or ratified by the defendants.

After a failure to agree, the agreement for arbitration was signed in accordance with the terms of the policy. This agreement expressly provided that "neither this submission nor the award of said referees shall in any way affect any other question than the amount of the aforesaid loss or damage, nor waive nor impair any right of any party hereto." Even if there had been any doubt in the minds of either party as to the intention of the other, here was a plain declaration that by the proceedings under the arbitration clause neither waived any right. By that declaration each party must stand. The only thing done by the company was to send down agents to agree upon the amount of loss, or in case of failure of an agreement, to agree upon arbitration in accordance with the terms of the policy.

While the defendants might have waited for the sworn statement before attempting to settle the amount of loss, yet it is very important, especially where there is reason to believe or suspect that either through bad faith, mistake or honest prejudice the insured may exaggerate the amount of his loss, that the insurer should be promptly on the spot and begin an investigation. And the mere fact that the insurer does so appear and proceed to determine the loss and sign an agreement for arbitration like the one in this case is no evidence of a waiver of the requirement of the policy as to the sworn statement. See *Cook* v. *North British & Mercantile Ins. Co.* 183 Mass. 50, and cases cited. *Boruszewski* v. *Middlesex Mutual Assur. Co.* 186 Mass. 589, and cases cited.

The plaintiff further contends that the correspondence which subsequently took place between the respective counsel would warrant a finding of waiver. Even if it be assumed in favor of the plaintiff that the letters written by the counsel for the defendants were duly authorized, we are of opinion that there is in the correspondence no evidence of waiver. While it is true that the letter of March 30, 1909, in answering the suggestion as to proof of loss contained in that of the plaintiff's counsel of March 29, 1909, states that the writer has been informed by the insurance companies interested "that no arbitration of the amount of this loss has been had and that no loss is as yet payable to Mrs.

Rockwell," it is also true that immediately following these words come these, namely, "if any liability exists on the part of these companies;" and the letter ends thus: "I beg to advise you that the companies will rely upon all their legal rights in the premises." Certainly here is no evidence of waiver. The letter of April 24, 1909, simply states in answer to an inquiry made in the letter of April 20, 1909, about the reference, the reasons why the referees' proceedings are not satisfactory to the defendants and proposes a new arbitration. But there is no withdrawal of the language contained in the letter of March 30, 1909, and we find no evidence of waiver in this more than in the original proceedings for reference.

In the opinion of the majority of the court there was no evidence which would warrant a finding by the jury that the provision of the policy requiring a sworn statement was waived by any of the companies.

It becomes unnecessary to consider the grounds of defense peculiar to the New Hampshire Fire Insurance Company and the Dorchester Mutual Fire Insurance Company, or the other grounds of defense common to all the defendants. In each case the order is

*Judgment for the defendant.*

The case was argued at the bar in September, 1911, before *Morton, Hammond, Braley, & Rugg,* JJ., and afterwards was submitted on briefs to all the justices.

*M. B. Warner, (J. Barker* with him,) for the plaintiff.

*W. L. Came, (F. W. Brown & J. F. Noxon* with him,) for the defendants.