JOSÉ RODRÍGUEZ RODRÍGUEZ, demandante y apelante, *v.* UNITED STATES FIRE AND INSURANCE CO. OF NEW YORK, demandada y apelada.

No. 3374.—*Visto:* Marzo 19, 1925.  *Resuelto:* Junio 23, 1925.

1. SEGUROS—DEL CONTRATO EN GENERAL—INTERPRETACIÓN Y OPERACIÓN *(Operation)*—PROPIEDAD CUBIERTA POR LA PÓLIZA—MOBILIARIO DE ESTABLECIMIENTO COMERCIAL.—Aseguradas contra incendio "las existencias de provisiones en general" de un establecimiento comercial, el mobiliario de dicho establecimiento no se entiende cubierto por dicha póliza.

2. SEGUROS—AVISO Y RECLAMACIÓN DE PÉRDIDAS—RENUNCIA A DICHOS REQUISITOS—REQUERIMIENTO AL ASEGURADO PARA QUE NOMBRE UN ÁRBITRO.—El hecho de que una compañía de seguros requiera al asegurado para que nombre un árbitro para apreciar las mercancías no puede tener el efecto legal de una renuncia en cuanto a la falta de presentar el asegurado su estado de pérdidas *(proof of claim)*.

3. Seguros—Pérdida de los Derechos Bajo una Póliza por Quebrantamiento de Garantía, Estipulación o Condición Subsiguiente—Estipulación en Cuanto a Libros de Contabilidad.—Un comerciante que sólo lleva un libro en el que se anotan las compras pero no las ventas realizadas no cumple con la cláusula sobre *"libros de contabilidad* e inventario en caja de caudales*"* (*iron safe clause*) contenido en un contrato de seguro.

Sentencia de *Charles E. Foote,* J. (Primer Distrito, San Juan), declarando sin lugar la demanda, con costas. *Confirmada.*

*R. Martínez Nadal* y *R. A. Martínez,* abogados del apelante; *J. H. Brown* y *Clemente Ruiz Nazario,* abogados de la apelada.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

El demandante y apelante había asegurado las existencias de su establecimiento comercial en la compañía demandada por valor de $4,000 y por término de un año. El 15 de abril de 1922 ocurrió un incendio en la casa comercial del demandante y con motivo del siniestro se inició este pleito.

La póliza que fué expedida por la demandada y en la que constan las estipulaciones del contrato se hace formar parte de la demanda, pero no aparece que ella se haya unido al récord. No obstante de las alegaciones y de las pruebas se puede inferir que la misma contenía, entre otras cláusulas, las siguientes: 1º Notificar o dar aviso del incendio que ocurriera a la demandada; 2º Presentar el demandante a la demandada, dentro de los quince días subsiguientes al siniestro, a menos que una prórroga fuera concedida, un inventario expresando detalladamente las pérdidas sufridas y el valor exacto de sus existencias al tiempo del incendio; 3º Llevar el demandante libros de contabilidad e inventario en cajas de seguridad (*iron safe clause*), o sea la obligación de llevar tales libros no expuestos a las contingencias de un fuego; y 4º Que el incendio ocurriera por mero accidente y sin intervención directa o indirecta del demandante. En cualquiera de estos casos previstos que el demandante faltare a su cumplimiento, él quedaría privado de todo derecho a reclamar, incluso asimismo que en su re-

clamación de daños (*proof of claim*) se apoyare en declaraciones falsas.

El demandante alegó haber sufrido los siguientes daños: $1,397.59 por depreciación de las mercancías averiadas y las totalmente perdidas; $659.45, por depreciación del mobiliario, y $116.99, mitad de gastos por almacenaje y venta en pública subasta de las provisiones que resultaron averiadas.

[1] La apelada negó que el mobiliario estuviera cubierto por la póliza por no estar comprendido dentro de las palabras "las existencias de provisiones en general" que refiere el contrato en ese particular.

Como cuestión de ley, el mobiliario de un establecimiento comercial no se entiende incluido dentro del significado de "provisiones." 32 Cyc. 742. Y se ha determinado claramente que el aseguro sobre "existencias" (*stock*) o "mercancías" (*merchandise*) de una casa comercial únicamente se refiere a los artículos u objetos destinados para la venta y no a los que se dedican al uso del establecimiento. *Kent v. London, Liverpool & Globe Ins. Co.*, 26 Ind. 294, 89 Am. Dec. 463; *Agricultural Ins. Co. v. Collins*, 175 S. W. 1120 (Tex.).

La demanda por tanto en ese extremo no es bastante para sostener una causa de acción.

[2] Otra de las defensas de la demandada es que el demandante no presentó un estado de las pérdidas (*proof of claim*) faltando así a una de las condiciones de la póliza.

El apelante sostiene en su alegato sin embargo que habiendo requerido la demandada al demandante para que nombrara un árbitro, hubo la renuncia a que se cumpliera esa condición. Si como se ha declarado en el caso de *Parga & Frontera, S. en C. v. Royal Ins. Co.*, 32 D.P.R. 78, las disposiciones sobre arbitraje en pólizas de seguro son nulas en Puerto Rico por razón de lo que dispone el artículo 175 de la Ley No. 66 de julio 16 de 1921, (p. 649) cualquier indicación de la demandada en tal sentido no podía tener el efecto

legal de una renuncia en cuanto a la falta de presentar el demandante su reclamación. De todos modos aunque existe un conflicto en las autoridades respecto a si el mero hecho de entrar en un arbitraje implica o nó tal renuncia, nos parece como más racional y equitativa la doctrina que establece la Corte Suprema de Massachusetts en el caso de *Rockwell* v. *Hamburg Bremen Fire Ins. Co.,* 212 Mass. 318, 98 N. E. 1086, en que se declara:

"Una póliza de seguro de incendio proveía que en caso de pérdidas el asegurado debía presentar una declaración jurada y firmada por él, exponiendo el valor de la propiedad asegurada, su interés en la misma, y un detalle de todo otro seguro sobre la misma, así como el objeto del seguro y la manera cómo se originó el incendio, y otra estipulación proveía un arbitraje si las partes no llegaban a un acuerdo en cuanto a las pérdidas. Se resolvió que, habiendo el asegurado dejado de someter la declaración requerida, el acto del asegurador al enviar su agente especial para averiguar el montante de las pérdidas, y al proceder a determinar y adjudicar éstas por arbitraje, no fué una renuncia de la cláusula requiriendo al asegurado a someter la declaración."

Y más adelante se expone el claro razonamiento del motivo de la doctrina, diciendo:

"Aunque los demandados pudieron haber esperado la declaración jurada antes de tratar de ajustar el montante de las pérdidas, no obstante es muy importante, especialmente cuando hay razón para creer o sospechar que, bien por mala fe, error u honesto prejuicio el asegurado puede exagerar el montante de sus pérdidas, que el asegurador esté alerta y comience prontamente una investigación. Y el mero hecho de que el asegurador así lo haga y proceda a determinar las pérdidas y firma un acuerdo para arbitraje como el de este caso no es evidencia de una renuncia del requisito de la póliza en lo que respecta a la declaración jurada."

En el presente caso la prueba tendió a establecer que Hastrup, ajustador de la compañía aseguradora, escribió una carta al demandante incluyéndole un blanco para que consignara en él un estado de las pérdidas y así se hiciera constar por escrito la reclamación a la compañía y requi-

riéndole además para el nombramiento de un árbitro para apreciar las mercancías. La demandada no recibió contestación y el mismo demandante admite en su declaración que él no cumplió con ese requisito. Y éste fué uno de los fundamentos que tuvo la corte inferior para rechazar con razón la demanda.

[3] Asimismo la corte inferior declaró que el demandante no cumplió con la cláusula que imponía la obligación al demandante de llevar libros de contabilidad e inventario guardados en cajas de seguridad (*iron safe clause*) y su conclusión, que también consideramos como expresión correcta de los hechos que fueron probados, dice así:

"Que el demandante no cumplió con la cláusula del contrato de seguro sobre 'libros de contabilidad e inventario en caja de caudales' (*Iron Safe Clause*) y esto se desprende de la propia declaración del demandante y de la de su empleado. En el establecimiento sólo se llevaba un libro, pero en forma tan irregular y con tanto descuido que él no puede llamarse en modo alguno 'libro de contabilidad' a los efectos de dejar cumplido lo que exije la cláusula de la póliza ya mencionada."

El apelante insiste que no es necesario llevar los libros de contabilidad que pudiera llevar un tenedor de libros, especialmente cuando la póliza no determina la clase de libros que debían llevarse por el demandante y se basa para ello en la siguiente cita:

"Un convenio de 'llevar un juego de libros demostrando un récord completo de los negocios realizados, incluyendo todas las compras y ventas, tanto de contado como a crédito, en unión del último inventario del mismo negocio,' no debe ser interpretado como que significa aquellos libros que se llevarían por un experto tenedor de libros, pero es bastante si los libros que se llevan fueran tales que demostraran razonablemente a un hombre de ordinaria inteligencia, 'todas las compras y ventas, tanto de contado como a crédito.' El convenio impone al asegurado el deber de preservar en una forma inteligible, en uno o más libros de su propio gusto, prueba escrita de sus compras, de sus ventas, y de sus embarques, * * * " 14 R.C.L. 1141.

No puede ser más razonable y justa la doctrina legal citada, pero conforme a las circunstancias de este caso, la bondad de tal doctrina no ampara al apelante. El libro que él llevaba no podía dar una idea exacta de las existencias en el momento del siniestro. En él se anotaban las compras pero no las ventas realizadas, y de aquéllas no aparecía consignada la clase ni la cantidad de los artículos comprados. Se trató de justificar algunos asientos; pero no se presentaron todas las facturas, y de las producidas, ellas se referían a los últimos meses pero no a las de fechas anteriores. Y si a esto añadimos que hubo prueba tendente a demostrar que el siniestro no fué meramente casual, estamos aún más satisfechos por el conjunto de circunstancias concurrentes en este caso de sostener la sentencia de la corte inferior.

*Por todo lo expuesto la sentencia de la corte inferior debe confirmarse.*