SUCN. DE HOMAR, COLOM & Co., S. en C., et al., demandantes y apelantes, *v.* BRITISH AMERICA ASSURANCE Co., demandada y apelada; SUCN. DE HOMAR, COLOM & Co., et al., demandantes y apelantes, *v.* NORTH BRITISH & MERCANTILE

INSURANCE Co., LTD., demandada y apelada; SUCN. DE HOMAR, COLOM & Co., S. en C. et al., demandantes y apelantes, *v.* THE WESTERN ASSURANCE Co., demandada y apelada.

Nos. 4013–14–15.—*Vistos:* Marzo 23, 1927 y Mayo 21, 1928. *Resueltos:* Noviembre 13, 1928.

*López de Tord & Zayas Pizarro,* abogados de los apelantes; *José Sabater,* abogado de las apeladas.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Sucesores de Homar, Colom y Compañía, una sociedad mercantil establecida en Ponce, y Domingo Carles, un comerciante en la misma ciudad, presentaron ante la Corte de Distrito de Ponce, tres demandas contra las compañías de seguro contra incendios autorizadas en Puerto Rico, British America Assurance Co., North British & Mercantile Insurance Co., y Western Assurance Co., en reclamación del importe de seguro de mercancías de Domingo Carles, que fueron destruidas por un incendio ocurrido el 27 de junio de 1924, y que se hallaban bajo seguros de dichas compañías demandadas.

En las pólizas de seguro a que la demanda se refiere, aparece, como parte del contrato, lo que sigue:

"LIBROS EN INVENTARIO EN CAJA DE SEGURIDAD.

"Esta póliza quedará nula y sin valor y la compañía relevada de toda responsabilidad bajo la misma, si no fueren estrictamente cumplidas por el Asegurado las siguientes condiciones que forman parte de este contrato de seguro y por la presente quedan mutuamente entendidas y convenidas:

"1.—El Asegurado practicará por lo menos una vez al año, un inventario detallado artículo por artículo de las existencias cubiertas por el seguro; y a menos que tal inventario haya sido practicado dentro de doce meses anteriores a la fecha de esta póliza, el Asegurado queda así mismo obligado y por la presente se compromete a inventariar las existencias dentro de treinta días de la fecha referida. El incumplimiento de esta obligación hará que esta póliza quede completamente nula y sin valor y el premio por el tiempo no transcurrido a disposición del Asegurado.

"2.—El Asegurado conservará un juego completo de libros de contabilidad, que demostrarán claramente el movimiento de los negocios, incluyendo todas y cada una de las compras, ventas y embarques (al contado y a plazos) desde la fecha del inventario último y durante la vigencia de esta póliza.

"3.—El Asegurado garantiza a la compañía que guardará tales libros e inventarios conjuntamente con el inventario anterior al úl-

timo, si éste ha sido practicado, completamente cerrado en caja de seguridad a prueba de fuego, tanto de noche como en cualquier hora en que el edificio descrito no esté regularmente abierto a operaciones comerciales. De otro modo, el Asegurado se compromete a guardar tales libros e inventarios en sitio convenientemente seguro y apropiado, libre de peligro a consecuencia de incendio en el local que contiene las existencias aseguradas. Si el Asegurado, en cualquier momento durante la vigencia del seguro, dejare de presentar tales libros e inventarios, la presente póliza quedará inmediatamente nula y sin valor, la compañía relevada de toda responsabilidad bajo la misma y el Asegurado privado de reclamación alguna y de presentar acción judicial para el cobro de cualquier pérdida o daños bajo la póliza.''

Las pólizas de seguro se hallaban endosadas a favor de Sucesores de Homar, Colom y Co., en concepto de acreedores de Domingo Carles.

En sus contestaciones, los demandados aceptando la existencia de los seguros, y la ocurrencia del incendio, y negando que los géneros o mercancías existieran en la cantidad alegada, y en el valor que se les fijaba en la demanda, alegan que la parte demandante no había cumplido con las obligaciones del contrato de seguro, sobre todo, en lo que afectaba a tener sus libros encerrados en caja de seguridad, y entregarlos a las demandadas para poder conocer con exactitud las pérdidas, ni había probado o tratado de probar el montante de éstas, ni cumplido con las condiciones establecidas en las cláusulas que más arriba se copian, y que por esos hechos los contratos de seguros a que se refiere la demanda, habían quedado ineficaces.

Los casos fueron acumulados en la corte inferior, y se vieron como uno solo.

A la sentencia del tribunal inferior se une la opinión, en la que el Juez presenta sus conclusiones y puntos de vista, en materia de hecho y de derecho. De la lectura de la opinión, y de la sentencia, puede afirmarse lo siguiente:

1. El juez sentenciador no creyó que los libros de Domingo

Carles estuvieran encerrados en caja de seguridad, y protegidos contra los daños de un incendio.

2. El juez sentenciador no creyó que la parte demandante hubiera cumplido sus obligaciones en el contrato de seguro en cuanto a la prueba de los daños, y a la conservación de los libros, ni aún a la forma de llevar éstos.

3. El juez sentenciador creyó, como resultado de la prueba, que el demandante Domingo Carles, el día en que ocurrió el incendio salió de su establecimiento dejando la caja de seguridad en que guardaba los libros de su comercio, sin cerrar, y expuestos los libros a destrucción.

4. El juez sentenciador creyó que los libros de Domingo Carles, después del incendio, fueron llevados a Ponce, a poder de tercera persona, y no entregados a los aseguradores.

Sobre estas declaraciones de hecho, y sobre las conclusiones que abierta o implícitamente aparecen, dictó la Corte de Distrito sentencia en cada caso, declarando sin lugar las respectivas demandas. Esas sentencias son las apeladas.

Quince señalamientos de error se hacen por la parte apelante. Pudieran, con facilidad, reducirse a muchos menos, sin que la parte apelante perdiera nada en lo que se refiere a la exposición y defensa de sus puntos de vista. El exceso en el número de señalamientos de error no es beneficioso, ya que la calidad, no la cantidad, es lo que puede llamar la atención de las cortes de apelación, al resolver éstas.

Cinco de los señalamientos tienen directa relación con los libros comerciales de Domingo Carles. Son los que siguen:

"I. La Corte de Distrito de Mayagüez cometió error al dar como hecho probado de que todos los libros de contabilidad del asegurado Domingo Carles habían sido destruidos por el incendio. Véanse páginas 24, 25 y 23 respectivamente de las transcripciones de autos en estos casos.

"III. La Corte de Distrito de Mayagüez cometió error al resolver que los libros de comercio del asegurado Carles eran completamente inservibles para poder investigar y determinar la pérdida como consecuencia del siniestro: y cometió error al no resolver que

aunque dichos libros no fueran suficientes, la prueba complementaria de los libros de Sucs. de Homar, Colom & Co., S. en C., de acuerdo con el contrato existente e inventario presentados, eran suficientes para comprobar tal pérdida. Véanse páginas 24, 25 y 23 respectivamente de las transcripciones de autos en estos casos.

"IV. La Corte de Distrito de Mayagüez cometió error al resolver que tales libros no contienen todas las ventas a crédito y al contado y de que algunas empiezan con totales sin explicación, y que otros totales son a veces mayores que el movimiento de las cuentas desde la fecha que indican hasta el día del siniestro, y así mismo cometió error la Corte de Distrito de Mayagüez al resolver que los datos o antecedentes de tales libros se encontraban en otros libros de Vicens & Carles que se destruyeron en el incendio; y así mismo cometió error al resolver que los libros quemados en el estado en que estaban no podían demostrar el movimiento de los negocios del asegurado ni las pérdidas ocurridas en el siniestro. Véanse las páginas 24, 25 y 23 de las transcripciones de autos en estos casos.

"V. La Corte de Distrito de Mayagüez cometió error al resolver que la apariencia de destrucción de dichos libros por fuego demuestra que si estuvieron en la caja al ocurrir el incendio, dicha caja había quedado abierta y los libros dejados en exposición de destruirse. Véanse páginas 25, 26 y 24 de la transcripción de autos en dichos casos.

"VI. La Corte de Distrito de Mayagüez cometió error al resolver que los demandantes habían admitido que los libros carbonizados luego de llevarlos a Ponce y entregarlos al señor Colom estaban envueltos en periódicos de EL MUNDO y que en esa misma envoltura se encontraban dichos libros cuando se presentaron en evidencia, pero que dichos periódicos resultaron ser de fechas de fines 1924 y de mediados de 1925. Véanse páginas 25, 26 y 24 de las transcripciones de autos de dichos casos."

La corte *a quo* está perfectamente justificada en las conclusiones a que llegó en esta materia. Decimos esto después de estudiar la prueba, y entre ella los libros, o restos de libros que se han traído a este tribunal en esta apelación. De las declaraciones ofrecidas en testimonio no aparece que el demandante llevara otros libros, en el sentido que a esa palabra da el Código de Comercio, que aquellos de que son incompletos y casi informes restos los que se han traído a este tribunal. De estos restos no puede humanamente extraerse

prueba alguna acerca del estado de los negocios de Domingo Carles, dado que el fuego ha consumido partes importantísimas de ellos, y en materia de libros comerciales no cabe sentar afirmaciones por especulación, o por aproximación. Los llamados libros se hallan quemados en muy buena parte, cuando menos en todo su margen, con excepción de la parte donde se hace la encuadernación. Las cantidades en las cuentas han desaparecido en muchas de ellas de una manera muy apreciable, de forma que no puede practicarse operación aritmética alguna, que tenga la primera y esencial característica de esas operaciones, o sea la exactitud.

Es asimismo un hecho demostrado por la evidencia que el demandante Carles no probó sus ventas, en forma alguna satisfactoria. En su propia declaración ha demostrado este demandante que no podía dar una exacta suma de las ventas a crédito. Y del testimonio aparece también que datos y antecedentes de los libros que dijo el demandante llevaba, aparecen en cuentas y libros de la mercantil Vicens y Carles, que se dijo fueron destruidos por el incendio, y que a nuestro entender debieron ser guardados en la misma forma en que el contrato exigía se guardaran los de Carles.

No tiene gran importancia el que la Corte haya expresado en la opinión la forma en que los libros semi-carbonizados de Domingo Carles aparecieran envueltos en copias de *El Mundo*. La corte no se basó en ese extremo al dictar su sentencia. En cambio, tiene importancia el hecho de que esos restos de libros, después del incendio, en vez de ser entregados a los representantes de las compañías de seguros, a las que se informó por el demandante que se habían inutilizado por el fuego, se remitieran o entregaran a tercera persona, en Ponce. De esta manera, no entregando esos papeles, por quemados que estuvieran, el demandante Carles violaba las cláusulas obligatorias de un contrato; cláusulas que llevaban envuelta, a manera de pena civil, la ineficacia del contrato como consecuencia de su inobservancia. Y al resolver este

señalamiento de error, el VI, se resuelve también negativamente el señalado bajo el número II, en parte.

La corte inferior sostuvo que los libros de Sucesores de Homar, Colom y Co. no podían ser la prueba de la pérdida que el incendio ocasionó a Domingo Carles. Es verdad que este mantuvo que todas sus compras las hacía a aquella social. Pero la prueba de sus compras y la de sus pagos a la citada mercantil no es la prueba del estado de sus negocios, ya que Carles vendía al contado y a crédito, a otros compradores, y a más tenía que llevar su cuenta de gastos generales, y otras. No son los libros de un tercero, por estrecha que sea su relación con un comerciante, la prueba completa del estado de los negocios de este último.

El señalamiento de error que aparece bajo el número V, tiene importancia.

Es innegable que la creencia de la corte *a quo*, fué que los libros de comercio de Domingo Carles, no se quemaron dentro de la caja de seguridad; y si se quemaron allí, la caja tuvo que estar abierta para que el fuego produjera esos efectos.

Basta leer la declaración del perito Sr. Angel Pesquera, para llegar a la creencia a que ha llegado el Juez de la Corte de Distrito de Mayagüez. Después de lo que dijo este perito, no cabe admitir la posibilidad de que los libros que se encuentran encerrados en una caja de seguridad, cuya puerta esté cerrada en forma, ardan o se consuman, por un fuego, de la clase que fué el de que aquí se trata. Contra esa posibilidad se halla una ley física, constante e invariable, la necesidad del oxígeno, a la que se refirió el perito en su declaración (páginas 585 y 586 de la transcripción). La conclusión de la corte fué correcta.

Conviene ahora recordar las decisiones de este Tribunal en los casos *Rodríguez* v. *United States Fire and Insurance Co. of New York,* 34 D.P.R. 385, *Quiñones* v. *La Unión,* 34 D.P.R. 405, y *Compañía Mercantil Arroyana* v. *The Home Insurance Company,* 35 D.P.R. 682.

En la decisión en el caso *Rodríguez* v. *United States Fire*

*and Insurance Company,* al hablar de los libros de contabilidad que el apelante alegaba haber llevado, dijo este Tribunal Supremo:

"El libro que él llevaba no podía dar una idea exacta de las existencias en el momento del siniestro. En él se anotaban las compras, pero no las ventas realizadas, y de aquéllos no aparecía consignada la clase ni la cantidad de los artículos comprados."

Y en esa decisión se dice lo siguiente:

"Asimismo la corte inferior declaró que el demandante no cumplió con la cláusula que imponía la obligación al demandante de llevar libros de contabilidad e inventario guardados en cajas de seguridad (iron safe clause) y su conclusión, que también consideramos como expresión correcta de los hechos que fueron probados dice así:

" 'Que el demandante no cumplió con la cláusula del contrato de seguro sobre "libros de contabilidad e inventario en caja de caudales" (Iron safe Clause) y esto se desprende de la propia declaración del demandante y de la de su empleado. En el establecimiento sólo se llevaba un libro, pero en forma tan irregular y con tanto descuido que él no puede llamarse en modo alguno "libro de contabilidad" a los efectos de dejar cumplido lo que exige la cláusula de la póliza ya mencionada.' "

En la decisión en el caso *Compañía Mercantil Arroyana* v. *Home Insurance Co.* antes citado, declaró este tribunal lo que sigue:

"No se demostró, en resumen, por la apelada un récord completo de los negocios realizados para poner en claro las existencias de harina en un momento dado. La misma cláusula de llevar un juego de libros demostrativo de todas las operaciones, de compras y ventas, tanto al contado como a crédito, en unión del último inventario del negocio, fué interpretada en el caso de *Rodríguez* vs. *U. S. Fire Ins. Co.,* 34 D.P.R. 385, donde se sostuvo la insuficiencia de una prueba más o menos análoga a la aportada en el presente caso. Una interpretación sana y razonable de la misma cláusula la encontramos en *Home Insurance Co. of New York* vs. *Williams,* 237 Fed. 171, 176, en donde la doctrina sentada es como sigue:

" 'La cláusula de "iron safe" obligaba al asegurado a llevar un juego de libros que permitiera a la compañía aseguradora determinar de los libros y papeles que se le sometieran con certeza

razonable la cantidad de efectos en existencia al tiempo de ocurrir el incendio sin tener que recurrir a prueba oral, excepto en lo que se refería a la forma de llevar tales libros.'

"En el caso de *Compañía L'Union de Paris* vs. *Goldsmith,* 8 Fed. Rep. (2d Series) 137, la Corte de Circuito de Apelaciones del Primer Circuito, refiriéndose a una de las instrucciones que establecían que la cláusula 'iron-safe, clause' igual en sus términos a la del presente caso, es válida y obligatoria al asegurado, y que fué denegada por la corte inferior, dijo lo siguiente:

" 'Uno de los errores señalados es que la corte rehusó dar al jurado la siguiente instrucción:

"Se les instruye que la cláusula denominada 'iron safe' contenida en los Exhibits A y B del demandado, era una válida y obligaba al asegurado, el demandante; y que ustedes no pueden traer un veredicto a favor del demandante a menos que antes la prueba les demuestre claramente que se ha cumplido substancialmente con todos y cada uno de los requisitos y condiciones de la denominada 'iron safe clause'. Denegada. La demandada toma excepción. A. F. O.''

" 'Esta instrucción debió haber sido dada y la corte cometió error al negarse a trasmitirla al jurado.'

"Otro caso que parece bien análogo, donde la asegurada no pudo decir por sus libros las existencias que tenía el día del siniestro, es el de *Coggins* vs. *Aetna Ins. Co.,* 8 L.R.A. (N.S.) 839, 841, siendo el razonamiento de la Corte Suprema de North Carolina el siguiente:

" 'Nunca se ha hecho un inventario de los efectos comprendidos en la existencia de la tienda de Erastus, la cubierta por la póliza. No hay ahora, y nunca los ha habido, ningunos datos de los cuales se pudiera hacer un inventario razonablemente aproximado. El demandante declarando por sí mismo sobre esta cuestión correcta y propiamente dijo: "No, no sé qué cantidad de ferretería, provisiones y zapatos yo tenía." .... La corte tenía razón, por consiguiente, al resolver, basándose en la declaración del demandante, que había un incumplimiento de la primera estipulación de la denominada "iron safe clause." '

"Aplicando la misma doctrina podemos concluir que la prueba aportada en el presente caso no ha podido dar una idea cierta y verdadera de las existencias en el momento del siniestro, quedando incumplida implícitamente una de las condiciones más esenciales de la póliza, sin cuyo cumplimiento la asegurada no tiene acción para reclamar.''

Y en la decisión en el caso *Quiñones* v. *L'Unión,* citada, se dijo por el tribunal:

"En la obra de Joyce sobre Seguros, edición segunda, sección 3275, se dice que las estipulaciones de que se dará aviso dentro de un tiempo determinado y también que se suministrará a la compañía prueba de las pérdidas so pena de perder el seguro, son estipulaciones razonables y cuando se han insertado en la póliza o están contenidas en la carta constitutiva (charter) de la compañía, son condiciones obligatorias precedentes de cualquier derecho de acción a menos que sean renunciadas. En el caso de *Masino* vs. *Farmers' & Mech. M. Insurance Co.,* Sup. Ct. Penn. 1912, 84 Atl. 406, se declaró que cuando la póliza de seguro dispone que el asegurado debe dar aviso de las pérdidas por escrito a la compañía y tal aviso no es dado, el asegurado no puede recobrar por las pérdidas sin prueba de la renuncia de ese derecho (waiver). En *McCormack* vs. *N. British Ins. Co.,* 78 Cal. 468, se declaró que cuando una prueba preliminar es requisito requerido por la póliza de seguro, el asegurado debe alegar y probar que tal prueba se ha hecho o que este requisito ha sido renunciado. En 33 C. J. 8 y 74 encontramos que la prueba de las pérdidas son necesarias a pesar de que la compañía tenga conocimiento actual de las pérdidas; y que el suministrar la prueba de las pérdidas como es requerida por la póliza es una condición precedente a una acción por pérdidas, en ausencia de renuncia o impedimento (estoppel) que cohiba a la compañía solicitarla, y en ausencia de estatuto que releve de ella al asegurado. El caso de *Patrick* vs. *Farmers Ins. Co.,* 43 N. H. 621, 80 Ame. Dec. 197, sostiene igual principio. Es cierto que en 26 C. J. pág. 378, No. 484, se dice que cuando la pérdida es total no hay necesidad de cumplir esos requisitos, pero se funda en sentencias del Estado de Pennsylvania que sostienen esa doctrina para casos de destrucción total de edificios, distinta a los demás Estados. Véase 'Joyce on Insurance', sección 3338.''

El señalamiento de error que aparece bajo el número VI, está realmente estudiado y resuelto con esta jurisprudencia que citamos. Por la parte apelante no se cumplió, ni de hecho ni de derecho, con la cláusula de ''caja de seguridad.'' La prueba en el caso convence de ello; y lo que no han dicho algunos testigos lo dicen con toda elocuencia esos papeles y

libros quemados, que proclaman que ni estricta ni substancialmente se cumplió con tal cláusula.

El señalamiento número VIII, es la repetición, con diferente forma del número II, ya resuelto.

Y el que aparece bajo el número IX, es un resumen de los demás, que también quedan resueltos.

*Debe confirmarse la sentencia apelada.*