The Porto Rican American Tobacco Company, Demandante y Apelante, v. Canel, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de San Juan, Distrito Segundo, en pleito sobre cobro de dinero.

No. 2998.—Resuelto en noviembre 27, 1923.

Evidencia—Admisión de Libros de Comerciantes—Prueba.—La ausencia de los requisitos con que deben ser llevados los libros de comerciantes o corporaciones de acuerdo con el artículo 36 del Código de Comercio no afecta la admisibilidad de los mismos en evidencia, sino al alcance de su fuerza probatoria.

Cuenta Corriente—Pago—Prueba de Pago.—Examinada la evidencia de este caso en la opinión, se resolvió: que la misma justifica la sentencia que declaró sin lugar la demanda por haberse probado que el demandado pagó la deuda reclamádale.

Costas—Discreción en la Imposición de Costas.—Para que el Tribunal Supremo intervenga con la discreción judicial del juez sentenciador al imponer costas, es preciso que se pruebe abuso de discreción.

Los hechos están expresados en la opinión.

Abogados de la apelante: Sres. J. H. Brown & C. Ruiz Nazario.

Abogados del apelado: Sres. Texidor & de la Haba.

El Juez Asociado Sr. Franco Soto, emitió la opinión del tribunal.

Se trata de una demanda en cobro de dinero. La demandante es una corporación que se dedica a la fabricación y venta de cigarrillos y reclama del demandado la suma de $1370.22 por diferentes partidas que de dicho artículo vendió al demandado. Este último aceptó el hecho de las compras, pero alegó, como defensa, que pagó todas las facturas de cigarrillos tomados a la demandante.

La corte inferior declaró sin lugar la demanda, soste-

niendo la defensa de pago del demandado, y no conforme la demandante con la sentencia, interpuso esta apelación.

La apelante señala como errores: 1. Haberse condenado a la demandante al pago de las costas; 2º., negar la admisión como prueba de los libros de la demandante, y 3º., no permitir ciertas preguntas dirigidas a testigos de la demandante.

Para el examen de los errores, invertiremos su orden, y empezaremos por los dos últimos que discutiremos conjuntamente.

Junto a la demanda y para que formara parte de la misma, se presentó una cuenta corriente conteniendo la venta de diversas partidas de cigarrillos y sus respectivos precios, al demandado. Para probar dicha cuenta corriente se ofrecieron los libros de contabilidad de la demandante, y el demandado basándose en que dichos libros no estaban llevados de acuerdo con lo que prescribe el art. 36 del Código de Comercio, se opuso a su admisión, y la corte inferior sostuvo la oposición del demandado, rechazando dichos libros como materia de evidencia.

El artículo 36 del Código de Comercio, prescribe:

"Art. 36.—Presentarán los comerciantes los libros a que se refiere el artículo 33, encuadernados, forrados y foliados, al juez municipal del distrito en donde tuvieren su establecimiento mercantil, para que pongan en el primer folio de cada uno nota firmada de los que tuviere el libro.

"Se estampará además en todas las hojas de cada libro el sello del juzgado municipal que lo autorice."

La apelante sostiene que dicho artículo 36 del antiguo código español es de carácter procesal y está en conflicto con el artículo 102 de la Ley de Evidencia en sus apartados 4, 19 y 20 y que aquel artículo quedó derogado al aprobarse esta última ley.

Los apartados 4, 19 y 20 del artículo 102 citado estable-

cen ciertas presunciones de naturaleza no conclusiva, *juris tantum,* que dicen:

"4.—Que toda persona cuida de sus propios asuntos con celo ordinario."

"19.—Que las transacciones privadas fueron realizadas con rectitud y en debida forma.

"20.—Que se ha seguido el curso ordinario de los negocios."

La Ley de Evidencia fué aprobada en marzo 9 de 1905, pero el artículo 36 del Código de Comercio fué enmendado en fecha posterior, marzo 7, 1912, quedando enmendado en la siguiente forma:

"Art. 36.—Presentarán los comerciantes los libros a que se refiere el artículo 33, encuadernados, forrados y foliados, al juez municipal del distrito o al juez de paz de la localidad en donde tuviere su establecimiento mercantil, para que ponga en el primer folio de cada uno nota firmada de los que tuviere el libro.

"Los jueces municipales y de paz deberán usar un sello uniforme, que les será suministrado por el Departamento de Justicia, y habrá de imponerse en cada página de cada uno de los libros de los comerciantes a que se refiere este artículo; *Disponiéndose,* que el uso especial de dicho sello no se interpretará en el sentido de que las cortes municipales y de paz sean cortes de récord.

"Cada libro firmado y sellado en esa forma llevará un sello de rentas internas del valor de un dollar que se fijará y cancelará por el juez municipal o por el juez respectivo, escribiendo las iniciales de su nombre y la fecha de la cancelación en dicho sello de rentas internas, el cual se pagará por la parte interesada."

El solo hecho de haberse enmendado dicho artículo 36 por nuestra Legislatura en fecha posterior a la que fué aprobada la Ley de Evidencia, demuestra claramente que fué la intención de aquel cuerpo legislativo mantener la vigencia de dicho artículo cualquiera que fuera su naturaleza, ya substantiva o adjetiva. De manera que dicha disposición legal está vigente y no derogada implícitamente por la Ley de Evidencia, como sostiene el apelante.

La cuestión ahora es determinar si las formalidades que

exige el art. 36 en cuanto a los libros de comercio son requisitos que afectan su pertinencia (*competency*) o más bien se refieren a reglas para fijar su peso probatorio.

Desde luego que la teoría que inspira el artículo 36 es hacer intervenir al poder judicial para dar garantía de autenticidad a los libros y a las partidas en ellos consignadas; pero no se debe perder de vista que es una prescripción que no podemos tomar aisladamente y sí ponerla en relación y armonizarla con el artículo 48 del mismo Código de Comercio, que es donde, como consecuencia del artículo 36, se fijan las reglas para determinar la fuerza probatoria de los libros de comercio, según se lleven o no con las formalidades que marca el repetido artículo 36. Esto hace que copiemos el art. 48 del Código de Comercio que dice:

"Art. 48.—Para graduar la fuerza probatoria de los libros de los comerciantes, se observarán las reglas siguientes:

1ª.—Los libros de los comerciantes probarán contra ellos, sin admitirles prueba en contrario; pero el adversario no podrá aceptar los asientos que le sean favorables y desechar los que le perjudiquen, sino que, habiendo aceptado este medio de prueba, quedará sujeto al resultado que arrojen en su conjunto, tomando en igual consideración todos los asientos relativos a la cuestión litigiosa.

"2ª.—Si en los asientos de los libros llevados por dos comerciantes no hubiere conformidad, y los del uno se hubieren llevado con todas las formalidades expresadas en este título, y los del otro adolecieren de cualquier defecto o *carecieran de los requisitos exigidos por este Código,* los asientos de los libros en regla harán fe contra los de los defectuosos, a no demostrarse lo contrario por medio de otras pruebas admisibles en derecho." (Las itálicas son nuestras.)

3ª.—Si uno de los comerciantes no presentare sus libros, o manifestare no tenerlos, harán fe contra él los de su adversario, llevados con todas las formalidades legales, a no demostrar que la carencia de dichos libros procede de fuerza mayor, y salvo siempre la prueba contra los asientos exhibidos por otros medios admisibles en juicio.

"4ª.—Si los libros de los comerciantes tuvieren todos los requisitos legales y fueren contradictorios, el juez o tribunal juzgará por

las demás probanzas, calificándolas según las reglas generales de derecho.''

La regla 2ª. pone de manifiesto distintamente el criterio que venimos sustentando, o sea, que la ausencia de los requisitos que señala el artículo 36, no afectan la admisibilidad de los libros de comercio, sino más bien su fuerza probatoria, porque partiendo dicha regla 2ª. de la base que los libros llevados con todas las formalidades legales prevalecen sobre los no llevados en iguales circunstancias o resultaren defectuosos, esto presupone necesariamente la previa admisión de los libros no llevados con todas o algunas formalidades exigidas por el artículo 36, sujetos por consiguiente en tales condiciones, al análisis del criterio judicial en cuanto a su fuerza probatoria. Llegamos pues a la conclusión de que la corte inferior cometió error al rechazar los libros ofrecidos por la demandante para probar la cuenta corriente, y como consecuencia también fué cometido el segundo error, pues el testigo a quien se le hacían las preguntas era tenedor de libros de la corporación y las preguntas tendían a probar extremos relativos a la cuenta corriente. La objeción del apelado consistía en que la manera de probar la cuenta corriente era mediante los libros de la corporación y no por prueba oral.

Pero la corte inferior, por otra parte, llegó a la conclusión de que el demandado había probado el pago por otros medios de prueba, procedentes de la misma parte demandante. Si esto es así la sentencia de la corte inferior en nada ha lesionado los derechos substanciales de la demandante. A ese efecto al fundar su opinión, la corte inferior, en parte, dice:

''La importancia y el valor de las declaraciones del Sr. Pasarell, saltan a la vista. No podemos dudar de su veracidad. La demandante reclama el pago de varias partidas de cigarrillos, que, alega, le fueron tomadas por el demandado por valor de $1,370.22 desde el 30 de junio de 1919 a enero 12, 1921. No ha demostrado en forma

alguna cuál partida, o cuál o cuáles facturas, en qué fechas, por cuántas cajas, y a qué precios dejó Canel de pagar. El demandado afirma que pagó todas las facturas recibidas en el curso de sus negocios. Y entre los documentos para justificarlo, además de algunos recibos, se nos presentó un Memorándum de Crédito expedido por la Compañía demandante a favor de Canel el 12 de enero de 1912, precisamente en la fecha en que terminaron las operaciones de la supuesta cuenta corriente. Ese memorándum dice lo siguiente:

" 'San Juan, P. R., enero 12 de 1921. Credit Memorandum, from Porto Rican American Tobacco Company of Porto Rico.—To Romualdo Canel, Puerta de Tierra, San Juan, P. R.—*We credit your account this date, as follows:*

" 'Por diferencia en abono de 2% de descuento de pronto pago en las facturas de junio 30 de 1919 a la fecha que encontramos como sigue:

| | |
|---|---:|
| " 'Total de sus compras $4,658.04—2%_____ | 93. 16 |
| " 'Abonádole durante la fecha citada según detalla el extracto de cuenta de esta fecha_____ | 72. 79 |
| " 'Diferencia a su favor_____ | $20. 37 |
| " '2% extra sobre sus compras de cigarrillos del trimestre de octubre a diciembre_____ | 8. 41 |
| " 'Patente de octubre a diciembre_____ | 6. 00 |
| | $34. 78.' |

"Ddo. A."

"Del preinserto Memorándum debemos deducir que, en la fecha del mismo, 12 de enero de 1921, Canel *había pagado prontamente todas sus facturas desde el 30 de junio de 1919;* que se había hecho acreedor a los descuentos que solía la vendedora acreditar a sus clientes cuando le pagaban dentro de los plazos de cada venta, y que se le acreditó su importe.

"Si por actos de otra u otras personas en los que no ha tenido necesariamente que intervenir el Sr. Canel, ni se ha probado que intervieniese, la demandante fué víctima de un fraude realizado, en relación con aquella parte de su contabilidad referente a las operaciones con Canel, no podemos, con la prueba aducida, hacer responsable a éste del importe defraudado, o sea la suma reclamada en la demanda."

En relación con lo que puede probar el memorándum de crédito en cuanto al pago de la deuda, se hace necesario saber

lo que significan los descuentos que por dicho memorándum se hicieron al demandado. Esto mismo lo explica el testigo Pasarell, secretario y sub-tesorero de la demandante y quien tiene a su cargo el departamento de venta y crédito de la corporación. El afirma que a los clientes que pagaban prontamente sus facturas, o sea, dentro de un plazo de 30 días, se les hacía un descuento de un 2 por ciento del importe total de la factura al verificar el pago y otro descuento especial también del 2 por ciento que se liquidaba sobre el importe de las facturas o ventas realizadas y pagadas durante cada trimestre, y que al demandado se le concedieron tales plazos y descuentos. Estas manifestaciones dan valor al memorándum de crédito en que se apoya para su decisión el juez inferior.

La cuenta corriente que se acompañó a la demanda empieza desde el 30 de junio de 1919 hasta enero 12 de 1921 y el importe total de las facturas o ventas alcanza a la suma de $4,658.04 y sobre esta suma total de compras es que se acredita al demandado por el memorándum que lleva fecha 12 de enero de 1921, la misma fecha en que se cierra la cuenta corriente, los descuentos a que alude el testigo Pasarell, significando dichos descuentos que el demandado había verificado el pronto pago de todas las facturas o ventas que se hicieron a él por la demandante. El testigo Pasarell intenta, sin embargo, explicar la confección de esa nota de abono al demandado, diciendo:

"Yo ví el contenido de ese documento. 'Por diferencia en abono de 2% de descuento de pronto pago,' quiere decir los pagos que había efectuado, el pronto pago quiere decir más o menos a los treinta días: 'De 30 de junio a la fecha,' es a la fecha que se pasó esta nota. Referente a si esa factura había sido pasada: precisamente yo hice hacer esa nota de abono al enviarle el extracto de cuenta a Canel a fin de que todos los descuentos le fueran liquidados y se sacara el saldo neto, y así se lo explicaba en la carta que le escribí y acompañándole esa nota de abono."

La carta a que se refiere el testigo no aparece del récord y su tentativa de explicar que la nota de abono no se hizo más que con el simple objeto de acompañarla al extracto de la cuenta corriente, está en pugna con el verdadero móvil con que se hacían los descuentos a todo cliente de la demandante. La corporación daba un plazo máximo de 30 días para el pago de las facturas y la persona que hacía el "pronto pago" dentro de ese plazo se le abonaba por la demandante el 2% sobre el importe de cada factura y también se le abonaba otro descuento adicional sobre el total de ventas en cada trimestre. Si el saldo de la cuenta corriente del demandado, desde el 30 de junio de 1919 a 12 de enero de 1921, montaba a $4,658.04 y el testigo Pasarell, encargado del departamento de ventas, concedió al demandado el descuento del 2 por ciento que implicaba el pronto pago sobre el total de aquel saldo, ello indicaba que la demandante admitía por su propia nota de abono que implícitamente el demandado había hecho el "pronto pago" de cada factura dentro del plazo máximo que concedía la corporación. De otra suerte si el demandado debía parte del saldo, pues una parte es la que se reclama, era lo más natural y lógico que la nota de abono del 2 por ciento, o memorándum de descuentos, se aplicara a aquella parte de la cuenta que había sido prontamente pagada y no al total del saldo ni a la parte pendiente de cobro y que por morosidad del deudor daba lugar a acudir a los tribunales para su cobro. Asimismo del memorándum aparece otro abono del 2 por ciento sobre compras del demandado que corresponden al último trimestre de octubre a diciembre. Y ese es un descuento adicional al primer descuento por el total de compras en cada trimestre. Si se abona el descuento sobre todas las facturas de un trimestre, hay que presumir dos cosas, 1º., el previo pago de cada factura, y 2º., que las facturas correspondientes a los trimestres anteriores han sido

satisfechos. El trimestre de octubre a diciembre comprende el final de la cuenta corriente, y ello implica por el descuento que se abonó al mismo, que la cuenta en su totalidad había sido saldada.

En la prueba puede además observarse que la demandante trató de demostrar que en la cuenta corriente del demandado ocurrieron algunas irregularidades, como ciertos pagos que se alega que no fueron realmente hechos y aparecen sin embargo anotados en el libro mayor sin resultar del libro de caja. Se trató de demostrar también la manera como pudieron tener lugar tales irregularidades, pero nada demostró la conexión del demandado con las mismas. Por el contrario, el contador público W. T. Woodbridge que declaró en el juicio como testigo de la demandante y quien había hecho un examen de la contabilidad de los libros de la corporación, explicando concretamente la forma en que se cometieron las irregularidades en la cuenta del demandado, admite la posibilidad de que se hicieran tales irregularidades o fraudes sin que fuera culpable el demandado. Las palabras de dicho experto en ese punto, fueron: "De modo que pudo haberse pagado el dinero y un empleado pudo haberse apropiado ese dinero y hacer aparecer los asientos falsos en el libro, sin culpabilidad ni complicidad por parte de Canel."

Examinado el primer error que se refiere a la imposición de costas a la demandante y visto el resultado del pleito, no podemos convenir que se haya cometido. Se alega por el apelante que ni la demanda es frívola ni la demandante actuó de mala fe al establecerla, pero al imponer las costas el juez inferior ejerció su discreción teniendo en cuanto el grado de culpa o temeridad de la demandante al dictar su sentencia y contra dicha discreción no podemos ir en este caso a menos que se demostrara que se abusara de la misma.

Por las razones expuestas, la sentencia debe confirmarse.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Hutchison.