COMPAÑÍA MERCANTIL ARROYANA, demandante y apelada, *v.* THE HOME INSURANCE COMPANY, demandada y apelante.

No. 3539.—*Visto:* Abril 23, 1926.  *Resuelto:* Julio 9, 1926.

1. SEGUROS—ACCIONES SOBRE PÓLIZAS—DE LA DEMANDA—ALEGACIÓN EN CUANTO AL CUMPLIMIENTO DE LAS CONDICIONES DE LA PÓLIZA—EN GENERAL.—En acción en cobro de póliza si en la demanda se consigna la celebración del contrato de seguro, el premio pagado y el tiempo en que estaba en vigor, la cantidad asegurada y la ocurrencia del siniestro, la demandante cumple con el estatuto (Comp. 5111) alegando en términos generales que cumplió con todas las condiciones de la póliza.

2. APELACIÓN Y·ERROR—REVISIÓN—CUESTIONES DE HECHO, VEREDICTOS Y CONCLUSIONES—CONCLUSIONES SOBRE PRUEBA CONTRADICTORIA.—En el caso de autos la corte inferior resolvió dos cuestiones en sentido adverso al apelante—una referente a la interpretación del contrato de seguro y la otra referente a la propiedad de la cosa asegurada. *Se resolvió:* que la prueba sobre dichos extremos fué contradictoria y no se encontraba, de su examen, que la conclusión de la corte inferior fuera errónea.

3. SEGUROS—CANCELACIÓN, ENTREGA *(Surrender)*, ABANDONO O RESCISIÓN DE LA PÓLIZA—FORMA EN QUE OPERA LA CANCELACIÓN DE UNA PÓLIZA Y EFECTO DE LA CANCELACIÓN—SINIESTRO CUANDO YA EL AVISO DE CANCELACIÓN SURTÍA SUS EFECTOS.—Recibido aviso de cancelación de una póliza en fecha bastante remota a un siniestro separado e independiente de un conato ocurrido con anterioridad, sin relación de causa y efecto entre ambos acontecimientos, y basada la acción de cobro en los daños causados por el segundo siniestro *cuando ya la cancelación estaba surtiendo sus efectos, no cabe darle efecto* a la póliza después de dicho aviso de cancelación.

4. SEGUROS—ACCIONES SOBRE PÓLIZAS—DEL PESO DE LA PRUEBA—VALOR DE LOS OBJETOS ASEGURADOS.—Cuando no se trata de una póliza de valor *value*

*policy*, como en el caso de autos, al asegurado incumbe la prueba del justo valor que los objetos asegurados tuvieren en el mercado al tiempo de ocurrir el siniestro.

5. Apelación y Error—Revisión—Cuestiones de Hecho, Veredictos y Conclusiones—Conclusiones Sobre las Pruebas — Suficiencia de éstas para Sostener Aquéllas—Prueba Insuficiente para Sostener Una Conclusión.—Examinada la prueba relacionada con el valor de la propiedad destruída al tiempo del siniestro, *se resolvió:* que las pérdidas que se alegaron causadas no fueron probadas y la corte inferior erró al considerar suficiente la prueba sobre tal extremo.

6. Evidencia — Prueba Documental — Presentación *(Production)*, Autenticación y Efecto—Libros de Cuentas—Objeciones a su Presentación—Objeciones que Van al Peso Probatorio y no a su Pertinencia *(Competency)*.—La objeción hecha a la presentación de un libro mayor por la forma (irregularidades) en que se ha llevado se refiere más bien al peso—alcance de su fuerza probatoria—que a su admisión *competency (P. R. Am. Tob. Co. v. Canel,* 32: 553, ratificado).

7. Seguros—Pérdida de los Derechos Bajo Una Póliza por Quebrantamiento de Garantía, Estipulación o Condición Subsiguiente—Estipulaciones de la ''Iron-Safe Clause''—Prueba de las Existencias a la Fecha del Siniestro.—En acción en cobro de póliza, cuando la evidencia aportada para probar las existencias a la fecha del siniestro no da una idea cierta y verdadera de dichas existencias en el momento de que el siniestro ocurrió, queda incumplida una de las condiciones esenciales de la póliza *(iron-safe clause)* sin cuyo cumplimiento el asegurado no tiene acción para reclamar.

Sentencia de *Gabriel Castejón,* J. (Guayama), declarando con lugar la demanda, sin costas. *Revocada,* declarándose sin lugar la demanda, sin especial condena de costas.

*Henry G. Molina* y *Leopoldo Feliú,* abogados del apelante; *E. H. F. Dottin* y *C. Domínguez Rubio,* abogados de la apelada.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

La demandante aseguró por conducto de F. A. C. Hastrup, *broker,* en la compañía demandada las existencias de harinas en saco que tenía almacenadas en un edificio de mampostería sito en Arroyo. El seguro alcanzaba a la cantidad de $15,000, pero se dividió en cinco pólizas de $3,000 cada una, pero solamente es objeto de este pleito la póliza No. 55,750 que fué expedida en julio 22, 1921, para tener efecto por tres meses mediante la prima de $22.50 que pagó la demandante. Se alega en la demanda que en agosto 15, 1921, ocurrió un incendio en la fábrica de pasta donde estaban

almacenadas las existencias de harina aseguradas, y que dichas existencias fueron destruídas totalmente por el fuego.

La demandada sostuvo en sus varias defensas que la harina no era propiedad de la demandante y sí de la Kansas Milling Co.; que la póliza había sido cancelada y negó que la demandante cumpliera con las condiciones de la póliza para poder recobrar los daños causados por el fuego.

La corte inferior sostuvo la demanda y condenó a la demandada al pago de los $3,000 objeto del seguro.

[1] Como primera cuestión la apelante sostiene la insuficiencia de la demanda porque la alegación de "que la demandante ha cumplido todas y cada una de las condiciones de la precitada póliza de seguro. . . . . " contiene condiciones que incumbía cumplir a la apelada, pero que no se relacionan ni mencionan en la demanda.

El artículo 127 del Código de Enjuiciamiento Civil dice:

"Art. 127.—Al alegar el cumplimiento de las condiciones establecidas en un contrato, no será necesario exponer los hechos probatorios de dicho cumplimiento, pero podrá manifestarse en términos generales que la parte cumplió debidamente todas las condiciones que le concernían, y si se impugnare dicha alegación, la parte que hizo ésta deberá probar en el juicio los hechos que demuestren dicho cumplimiento."

Consignándose en la demanda la celebración del contrato de seguro, el premio pagado y el tiempo que estaba en vigor, cantidad asegurada y la ocurrencia del siniestro, la demandante cumplió con el estatuto alegando en términos generales que cumplió con todas las condiciones de la póliza.

[2] Una de las cuestiones que va al fondo del caso y que las partes discuten extensamente se refiere a la interpretación del contrato y a la propiedad de la harina. La apelante sostiene que la póliza de seguro comprendía 1,300 sacos de harina con las marcas "Golden Seal" y "Lassens Perfection," que es el distintivo de la marca de fábrica de la Kansas Milling Co. La contención establece que se tra-

taba de un seguro fijo y determinado sobre cantidad y calidad de la harina y no sobre una póliza flotante como sostiene la apelada.   Asimismo alega la apelante que la harina así asegurada era de la propiedad de la Kansas Milling Co. por tener la apelada sólo en depósito la mercancía asegurada y aparecer la misma endosada a su favor.

La póliza al referirse a la casa asegurada, dice *"on stock of flour in bags, while contained in the two-story, etc."*   Si atendemos a la letra del contrato, no hay duda alguna que se trata de una póliza flotante.   La prueba de la apelante trató de establecer, sin embargo, que la intención de los contratantes fué distinta, en sentido de que el convenio se hizo bajo la base de extender las pólizas sobre harinas en sacos, en cantidad específica, tratando de reforzar su posición alegando a la vez que la harina asegurada era la de la Kansas Milling Co. y la que tenía en depósito la apelada entretanto satisficiera su precio.   Uno y otro extremo fueron resueltos por la corte en sentido adverso a la apelante.   La prueba fué contradictoria y no encontramos de su examen que la conclusión de la corte fuera errónea.

[3] Se imputa como error no concluir y decidir la corte inferior que la póliza fué cancelada.

La póliza contiene la siguiente cláusula:

"9.—El seguro puede terminarse en cualquier momento a petición del asegurado, caso en el cual la compañía retendrá el tipo acostumbrado para seguros por corto tiempo por el período que la póliza haya estado en vigor.   El seguro también puede terminarse en cualquier momento a discreción de la compañía, dando aviso al efecto al asegurado, debiendo devolver la compañía, al solicitarse, la proporción correspondiente de la prima por el tiempo no transcurrido a partir de la fecha de la terminación de la póliza."

La corte inferior resolviendo esa defensa, dice así:

"La prueba demuestra que después de ocurrir un conato de incendio en la fábrica de pastas que tuvo lugar en la madrugada del lunes 15 de agosto de 1921 la demandada comunicó a la demandante la cancelación de la póliza.

"A nuestro entender tal cancelación ha sido tardía ya que en el momento de la misma la póliza estaba afecta a las responsabilidades sufridas por el dicho conato de incendio."

En la demanda se alega, sin embargo, que en agosto 15, 1921, ocurrió un incendio en la fábrica de pastas, destruyendo totalmente la mercancía. Como un conato significa un acto que empieza y no llega a consumarse, parece existir cierta incongruencia entre lo alegado y lo que sienta probado el juez inferior. La prueba es la que parece aclarar esa contradicción. José D. Padilla, presidente de la corporación demandante, se encontraba en San Juan la noche del lunes, 15 de agosto de 1921. En la mañana temprano visitó a F. A. C. Hastrup, de quien decía que más que llamarle su *broker*, personalmente era su agente y le notificó, como agente también de la compañía de seguros, haber sido llamado por teléfono desde Arroyo o Guayama dándosele aviso del conato ocurrido en la fábrica de pastas. Padilla ofreció salir inmediatamente para Arroyo y avisar por teléfono a su llegada de lo que encontrare. Hastrup dice que no recibió, sin embargo, ninguna comunicación de él y dos días después, el 17 de agosto, se encontraba en Adjuntas en donde recibió el segundo aviso de la destrucción total de las existencias aseguradas. Y Hastrup el día que fué avisado del conato, 15 de agosto, por instrucciones de la compañía aseguradora, dirigió a la apelada el siguiente telegrama:

"August 15th, 1921.—Compañía Mercantil Arroyana, Arroyo.— Koerber acaba cancelar sus cinco pólizas por total quince mil dollars sobre harina extendidas veintidós Julio ppdo. devolviéndome premio no devengado. Esto desde luego no afecta validez reclamación motivo conato esta madrugada. Espero amplios detalles suyos. Hastrup."

Este aviso fué confirmado por carta que dice:

"F. A. C. Hastrup, San Juan, Porto Rico.—August 15th, 1921. —Compañía Mercantil Arroyana, Arroyo, P. R.—Muy Señores n/ y amigos:—Esta mañana a primera hora me visitó su estimado Sr. Padilla notificándome haber recibido noticia de esa de un incendio

ocurrido en la harina recientemente asegurada con la Home Insurance Co. of New York, de los mutuos amigos Koerber & Co., por la suma de $15,000.

"Inmediatamente me puse a la voz con los citados Agentes y también con el Sr. Macías, Representante de los beneficiarios bajo esas pólizas, y ambos me expresaron su gran extrañeza al acontecimiento en vista de haber sido ayer Domingo y seguramente permanecido cerrado el local, lo que hace más inexplicable el siniestro.

"En el ínterin también hablé por teléfono con el Sr. Fantauzzi para saber algunas nuevas sobre el particular, y este amigo me contestó que el fuego en sí hizo poco daño pero que el agua de las mangueras de incendio dañaron bastante número de sacos. Repítoles mi sorpresa desagradable sobre este acontecimiento máxime cuando próximamente hace cosa de una semana los Sres. Koerber me llamaron la atención sobre el precio demasiado alto en que estaba asegurada esa harina, puesto que el mercado había bajado considerablemente y que realmente su valor no pasaba de $10,000 a $11,000.

"Les notifiqué a Vdes. por telégrafo que acababa de recibir endosos de cancelación por parte de Koerber para esas cinco pólizas así como un cheque por el premio no devengado bajo las mismas. Todo esto se lo incluyo bajo este sobre, suplicándoles firmar los cinco 'lost policy release' devolviéndolos acá junto con las pólizas para hacerlos firmar aquí también por el Sr. Macías.

"Ansiosamente espero sus nuevas noticias sobre la ocurrencia, y en el ínterin quedo, suyo affmo. amigo y s. s."

El cheque indicado aparece cobrado ·por la apelada y su contenido, así como el endoso que de él hizo la apelada, leen así:

> KOR- "The National City Bank of New York. — San Juan BER Branch.—The National City Bank of New York.—No. 591 & San Juan, P. R. August 15th 1921.—Pay to the order of CO. Cia. Mercantil Arroyana EIGHTY-SIX 25/100 U. S. Dollars.— INC. Korber & Co. Inc., (sgd.) W. Woods. U. S. $86.25/100.
>
> "Endosos: Páguese a la orden de Royal Bank of Canada Valor en cuenta Arroyo, P. R., Agosto 18, 1921. Compañía Mercantil Arroyana (Fdo.) José D. Padilla, Presidente."

La apelada ha tratado de explicar su teoría en sentido de que si bien existió un conato el 15 de agosto, el incendio que sucedió dos días después causando la pérdida total de

las existencias, fué la continuación del conato que parece que no había sido extinguido. No hay evidencia, no obstante, que tienda a establecer tal teoría. El peso de la prueba estaba en la apelada y era un hecho que debió esclarecer enteramente. Como hemos visto, nada informó de lo ocurrido a consecuencia del conato. Lejos de hacerlo se encontraba en Adjuntas durante la segunda ocurrencia. La apelada cobró el cheque al día siguiente del voraz incendio que destruyó todo y ello fué la aceptación implícita por la apelada de haber recibido en tiempo el aviso de la cancelación, en fecha bastante remota al segundo siniestro, separado e independiente del conato, sin relación de causa a efecto entre ambos acontecimientos. La cancelación no se refería, por tanto, a pérdidas ya sufridas por el conato. Por el contrario, en el aviso se reservaba a la apelada el derecho de reclamar por tales pérdidas y por ello no cabe discutir que la cancelación fué hecha después de causados los daños. La apelada basó su demanda, sin embargo, en los daños o pérdidas causados por el segundo siniestro, ya cuando la cancelación de la póliza estaba surtiendo todos sus efectos y la corte erró al darle efecto a la póliza después de haberse dado el aviso de cancelación.

[4, 5] Asumiendo, por otra parte, que la póliza hubiera continuado en vigor, la apelante sostiene que no se cumplieron por la apelada, entre otras condiciones de la póliza, las siguientes: El valor de la harina en el mercado el 15 de agosto de 1921 ni la cantidad almacenada en dicha fecha.

La cláusula pertinente de la póliza en cuanto al valor de la propiedad destruída, dispone:

"La compañía por la presente conviene con el asegurado . . . . que si la propiedad antes descrita o cualquier parte de la misma es destruída o averiada por fuego . . . . la compañía pagará o responderá al asegurado del valor de la propiedad así destruída, o del montante de tales daños ocasionados a la misma, hasta una cantidad que no exceda, con respecto a todas y cada una de las partidas arriba especificadas, de la suma que aparece al lado opuesto respec-

tivamente, sin exceder en total la suma de tres mil dólares, y no excediendo en ningún caso, la cantidad del valor asegurable del asegurado al tiempo de ocurrir el incendio.''

Los artículos 397, 406 y 408 del Código de Comercio prescriben:

''Art. 397.—La garantía del asegurador sólo se extenderá a los objetos asegurados y en el sitio en que lo fueron, y en ningún caso excederá su responsabilidad de la suma en que se valuaron los objetos o se estimaron los riesgos.

''Art. 406.—La valuación de los daños causados por el incendio, se fijará por peritos en la forma establecida en la póliza, por convenio que celebren las partes, o, en su defecto, con arreglo a lo dispuesto por la Ley de Enjuiciamiento Civil.

''Art. 408.—Si el valor de las pérdidas sufridas excediere de la cantidad asegurada, el asegurado será reputado su propio asegurador por este exceso, y sufragará la parte alícuota que le corresponda de pérdidas y gastos.''

Según la póliza la obligación de la apelada era pagar o indemnizar a la apelada del valor de la propiedad destruída, no excediendo de la suma de $3,000 que se señaló como límite máximo de la responsabilidad de la compañía aseguradora. La valoración se debe hacer entonces estimando los objetos asegurados por el justo valor que tuvieren en el mercado al tiempo de ocurrir el incendio. No se trata, pues, de una póliza que pueda incluirse dentro de la denominación de *value policies* y al asegurado incumbe la prueba del valor de las harinas para dejar cumplida esa parte del contrato. La única prueba presentada a ese fin es la del testigo José D. Padilla y presidente de la corporación apelada. Él declaró que en la fecha del incendio la harina valía a $10.25, $10 y $9.75, pero este precio parece inferirlo de los libros, pues dijo ''que el valor total de la harina destruída por el incendio, que estaba depositada en mi almacén, viendo los libros para decirlo y según éstos, era de $22,629.72.'' Así puede verse en repetidas manifestaciones del testigo que al referirse al valor de la propiedad destruída lo deduce de los

libros o del precio de factura de sus compras. Preguntado, por ejemplo, del valor de 588 sacos que tenía en existencia el 31 de mayo de 1921, contestó: "Tengo que ver el saldo que dan los libros . . . . cinco mil novecientos cuarenta dollars cinco centavos, según los libros." Asimismo dice, "según los libros" para valorar la existencia de sacos que tenía en 30 de junio de 1921. Y la harina en sacos procedente de la Kansas Milling Co. la estima por el precio de factura porque después de afirmar que "el valor de la factura de esos 1,300 sacos de harina era de $12,770.00," añadió: "El precio convenido con el Sr. Macías por esa harina en el convenio de que he hablado, era pagar el valor total de $12,770, el mismo precio estipulado en los contratos de compra." Su declaración puede decirse que se resume en estas palabras: "El 15 de agosto nosotros teníamos una existencia de harina por valor de $22,629.72. Comprada parte a crédito y parte al contado. Los libros, el libro mayor indica ahí. En ese valor está incluída la harina de la partida de 1,300 sacos. . ." Y respecto a estos últimos sacos finaliza su declaración, diciendo: "Ese cálculo lo hago a $10.00, de acuerdo con el precio del contrato."

Con esta prueba no podemos decir que se ha cumplido la regla que unánimemente parece sostener la jurisprudencia de que el valor de la propiedad destruída debe ser el valor justo en el mercado *(fair market value)*. Las autoridades la expresan así:

"Un contrato de seguro contra incendio regularmente es un contrato de indemnización y el asegurado tiene derecho a que se le ponga en la misma situación pecuniaria en que él hubiera estado si no hubiese ocurrido el incendio; y excepto en el caso de pólizas de valor *(valued policies)*, o cuando hay disposiciones estatutorias que limiten el montante de la responsabilidad, la regla general es que en un caso de pérdida total el asegurado tiene derecho a recibir el valor justo en el mercado de la propiedad al tiempo y en el lugar del siniestro, hasta pero sin exceder del montante de la póliza, aunque exceda del límite de seguro fijado por una regla de la compa-

ñía aseguradora. De acuerdo con esta regla el asegurado no tiene derecho a recibir el valor de la propiedad, como su valor real, aunque el.costo original de la propiedad puede considerarse como prueba de su valor en relación con prueba de su depreciación; tampoco afecta la responsabilidad de la compañía aseguradora por el valor real de la propiedad el hecho de que el asegurado había ofrecido vender la propiedad por menos de su valor real, ni el hecho de que no se pueda determinar sin dificultad el montante de la pérdida, y que hasta cierto punto sea cuestión de cálculos. El valor real debe calcularse al tiempo de la pérdida y no al tiempo que la propiedad esté en peligro por haberse desarrollado un incendio.'' 26 C. J., págs. 351-52, sec. 450.

En 14 R.C.L. 1304, sección 478, se expone, en síntesis, igual doctrina, diciéndose:

''El montante a recibir por la pérdida de objetos asegurados contra incendio es el valor real o en el mercado de los objetos al tiempo y lugar del incendio.''

No parece necesario que insistamos para decir que las pérdidas que se alegan causadas por el incendio no han sido probadas según exige la póliza y la jurisprudencia, y la corte cometió error al considerar suficiente la prueba en ese extremo.

[6, 7] La apelante sostiene que tampoco quedó establecido por la prueba, de acuerdo con los términos de la póliza, la cantidad de harina que tenía la apelada el día 15 de agosto de 1921.

La apelante se refiere en este punto a la cláusula que contiene la póliza y que generalmente se conoce bajo el nombre de *''iron-safe clause,''* la que dispone:

''1º.—El asegurado practicará, por lo menos una vez al año, un inventario detallado de las existencias cubiertas por el seguro, y a menos que tal inventario haya sido practicado dentro de los doce meses anteriores a la fecha de esta póliza, el asegurado debe inventariar detalladamente las existencias dentro de días a partir de la fecha en que se expide la póliza; de lo contrario esta póliza quedará completamente nula y sin valor a partir del vencimiento de tal pe-

ríodo y el premio por el tiempo no transcurrido será devuelto al asegurado.

"2º.—El asegurado conservará un juego completo de libros de contabilidad, que demostrarán claramente el movimiento de los negocios, incluyendo todas las compras, ventas y embarques, al contado o a plazo, desde la fecha del inventario mencionado en la sección anterior, y durante la vigencia de esta póliza.

"3º.—El asegurado deberá llevar tales libros e inventarios, conjuntamente con el inventario anterior al último, si éste ha sido practicado, completamente cerrados en cajas de seguridad a prueba de fuego, tanto de noche como en cualquier hora que el edificio descrito no esté regularmente abierto a operaciones comerciales; no pudiendo cumplir con esta disposición, el asegurado se compromete a guardar tales libros e inventarios en un sitio libre de peligro de un incendio que pueda destruir el mencionado edificio.

"Si el asegurado dejare de presentar tal juego de libros e inventarios para que sean inspeccionados por la compañía, la presente póliza quedará inmediatamente nula y sin valor, tal falta constituirá un impedimento perpetuo para recibir indemnización bajo esta póliza, y no se sostendrá ningún pleito o acción judicial por cualquier pérdida o daño cubierto por esta póliza."

La evidencia de la apelada para probar sus existencias en la fecha del siniestro, consistió en la declaración de José D. Padilla, con vista del libro mayor, único libro que fué presentado como prueba. La apelante objetó la presentación del libro por la forma en que se había llevado, pero sus objeciones se referían más bien al peso que a su admisión (*competency*). Véase el caso de *The Porto Rican American Tobacco Company* v. *Canel*, 32 D.P.R. 553.

Las diversas manifestaciones de Padilla refiriéndose a la existencia de harina, dicen así: "Yo no puedo contestarle con exactitud qué cantidad de harina tenía la mercantil en la fábrica de pastas porque los libros, desde luego, son los que lo indican. A fines de enero de 1921, no puedo apreciar aproximadamente, con los libros a la vista tampoco, porque los libros no lo pueden decir con exactitud." El testigo explica entonces las dificultades de llevar una cuenta exacta, diciendo que se acostumbraba llevar unas notas o libretas,

qué se quemaron en el fuego, y de éstas se hacía el resumen, bíen semanal o mensualmente llevándose a los libros. El testigo, no obstante, se contradice diciendo: ''En síntesis, se llevaba la contabilidad exacta de las existencias, que en cualquier momento dado se entraban en la fábrica de pastas; . . . . las llevaba porque para eso hay los libros, las libretas, y digo que sí, que llevaba la cuenta justa en que se podían determinar los números de sacos en cualquier día.'' Después de esta declaración ocurre en seguida el siguiente incidente:

''P.—Pues diga a la corte los sacos que había en 31 de Enero. R.—No puedo decirlo porque estaba en las libretas y se quemaron. El libro mayor es el volumen concentrado; y ese que Ud. explica son las misceláneas. P.—Ud no llevaba un libro especial sobre existencia de harina? R.—Llevaba mis notas. . . . . Llega, por ejemplo, el mes de enero del 21; el mes de febrero entraban esas harinas en pequeños lotes o en grandes lotes y a veces, por aquello de reunir mayor cantidad no se entraba en la misma fecha, porque como eso no es obligación hacerlo, porque eso estaba desde luego a juicio y discreción del administrador. . . . . Entraba harina a la fábrica y no se hacía figurar en el libro Mayor.''

El testigo, en resumen, afirmó que no podía determinar ni aproximadamente, la harina que estaba en la fábrica en enero de 1921, ni en los siguientes meses de febrero, marzo y abril, ni aun en todo el mes de mayo, con excepción del día 31. Desde esta última fecha es que aparecen llevarse las cuentas con más regularidad. A pesar de esto los 1,300 sacos de harina que fueron comprados a la Kansas Milling Co., aún cuando se le dió entrada en el libro mayor en relación con la cuenta ''Existencia de la fábrica de pastas,'' que fué la que se quemó con las existencias, no ingresó en su totalidad en dicha fábrica en la fecha que indica el libro, julio 31, 1921, haciéndose el ingreso de parte de ella en los primeros días de agosto. Si esto es así, ¿cómo es posible concluir que la sola prueba del libro mayor, con las irregularidades con que aparece llevado, en donde figuraban en-

tradas que realmente no existían, puede ser la prueba inequívoca de lo que·debió aparecer clara y fijamente de las existencias en el día y sitio del siniestro? Si como alegó la apelada y sostuvo la corte inferior que el contrato de seguro en este caso no era específico sino sobre existencias no determinadas, esto exigía por el carácter de flotante que se le daba a la póliza una cuenta diaria sobre las entradas y salidas de harinas, por el movimiento de la industria a que se dedicaba en la fabricación diaria de pan y pastas, junto al negocio de compraventa del artículo en el que también traficaba particularmente Padilla al mismo tiempo de tener la representación de la apelada como presidente y *manager* de la misma.

No se demostró, en resumen, por la apelada un récord completo de los negocios realizados para poner en claro las existencias de harina en un momento dado. La misma cláusula de llevar un juego de libros demostrativo, de todas las operaciones, de compras y ventas, tanto al contado como a crédito, en unión del último inventario del negocio, fué interpretada en el caso de *Rodríguez* v. *U. S. Fire Ins. Co.*, 34 D.P.R. 385, donde se sostuvo la insuficiencia de una prueba más o menos análoga a la aportada en el presente caso. Una interpretación sana y razonable de la misma cláusula la encontramos en *Home Insurance Co. of New York* v. *Williams*, 237 Fed. 171, 176, en donde la doctrina sentada es como sigue:

"La cláusula de 'iron safe' obligaba al asegurado a llevar un juego de libros que permitiera a la compañía aseguradora determinar de los libros y papeles que se le sometieran con certeza razonable la cantidad de efectos en existencia al tiempo de ocurrir el incendio sin tener que recurrir a prueba oral, excepto en lo que se refería a la forma de llevar tales libros."

En el caso de *Compañía L'Union de París* v. *Goldsmith*, 8 Fed. Rep. (2d Series) 137, la Corte de Circuito de Apelaciones del Primer Circuito, refiriéndose a una de las ins-

trucciones que establecían que la cláusula *"iron-safe clause,"* igual en sus términos a la del presente caso, es válida y obligatoria al asegurado, y que fué denegada por la corte inferior, dijo lo siguiente:

"Uno de los errores señalados es que la corte rehusó dar al jurado la siguiente instrucción:

" 'Se les instruye que la cláusula denominada "iron safe" contenida en los Exhibits A y B del demandado, era una válida y obligaba al asegurado, el demandante; y que ustedes no pueden traer un veredicto a favor del demandante a menos que antes la prueba les demuestre claramente que se ha cumplido substancialmente con todos y cada uno de los requisitos y condiciones de la denominada "iron safe clause." Denegada. La demandada toma excepción. A. F. O.'

"Esta instrucción debió haber sido dada y la corte cometió error al negarse a trasmitirla al jurado."

Otro caso que parece bien análogo, donde la asegurada no pudo decir por sus libros las existencias que tenía el día del siniestro, es el de *Coggins* v. *Aetna Ins. Co.,* 8 L.R.A. (N.S.) 839, 841, siendo el razonamiento de la Corte Suprema de North Carolina el siguiente:

"Nunca se ha hecho un inventario de los efectos comprendidos en la existencia de la tienda de Erastus, la cubierta por la póliza. No hay ahora, y nunca los han habido, ningunos datos de los cuales se pudiera hacer un inventario razonablemente aproximado. El demandante declarando por sí mismo sobre esta cuestión, correcta y propiamente dijo: 'No, no sé qué cantidad de ferretería, provisiones y zapatos yo tenía.' . . . . La corte tenía razón, por consiguiente, al resolver, basándose en la declaración del demandante, que había un incumplimiento de la primera estipulación de la denominada 'iron safe clause.' "

Aplicando la misma doctrina podemos concluir que la prueba aportada en el presente caso no ha podido dar una idea cierta y verdadera de las existencias en el momento del siniestro, quedando incumplida implícitamente una de las condiciones más esenciales de la póliza, sin cuyo cumplimiento la asegurada no tiene acción para reclamar.

Siendo éstas las conclusiones a que hemos llegado, no es necesario que discutamos las demás cuestiones que levanta la apelante.

*Por todo lo expuesto, debe revocarse la sentencia apelada.*