PAGÁN LÓPEZ & Co. *v.* MAYAGÜEZ DOCK AND SHIPPING Co.

APELACIÓN procedente de la Corte de Distrito de Mayagüez.

No. 782.—Resuelto en mayo 22, 1912.

CONOCIMIENTO DE EMBARQUE—INTERPRETACIÓN DE CONTRATOS—DESCARGA DE MERCANCÍAS—EMBARCADORES.—En este caso caso se discutía la significación de la cláusula 5ª. de los conocimientos de embarque que firman los embarcadores que envían sus mercancías por conducto de la "New York and Porto Rico Steamship Company." Se resolvió que de acuerdo con dicha cláusula dicha

compañía de vapores no tiene el derecho de contratar lanchas o ancones para el desembarque de mercancías por cuenta del receptor, cuando éste esté dispuesto a tomarlas y recibirlas al costado del buque al comenzar el desembarque o descarga y en lanchas proporcionadas por los receptores.

Id.—Interpretación de un Contrato—Cláusulas Aisladas de un Contrato.— En la interpretación de un contrato no debe atenderse solamente a la significación de una parte o cláusula aislada del mismo, sino que debe examinarse el documento en su totalidad para poder apreciar la intención que tuvieron las partes contratantes al celebrar el contrato.

Id.—Descarga de Mercancías—Derechos de Embarcadores y de la Compañía de Vapores.—De acuerdo con la doctrina del párrafo anterior interpretando en su totalidad el conocimiento de embarque que firman los que embarcan sus mercancías por conducto de la ''New York and Porto Rico Steamship Company,'' resulta que la persona a quien van dirigidas las mercaderías tiene el derecho de recibirlas al costado del barco tan pronto como se haga el descargue, y que la compañía de vapores o sus agentes tienen el derecho de contratar ancones para descargar las mercancías en ellos cuando el receptor de las mercancías no las recibe al costado del buque tan pronto como le toque el turno para la descarga.

Id.—Interpretación del Contrato—Objeto de la Interpretación—Intención de los Contratantes.—El verdadero fin que se proponen todas las reglas de interpretación es descubrir y poner en práctica la intención de los contratantes al otorgar el contrato objeto de interpretación.

Id.—Descarga de Mercancías—Obligaciones del Consignatario de las Mismas.—El consignatario de mercaderías no tiene derecho a demorar la descarga de un buque, sino que debe estar preparado para recibir sus mercancías al costado del buque y en el sitio donde se hace la descarga tan pronto como le llegue el turno a sus mercancías, y en esas circunstancias la compañía de vapores no tiene el derecho de entregarlas a otra persona para que las lleve a tierra por cuenta del dueño de las mismas.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Horton y Feliú.*

Abogado del apelado: *Sr. José de Diego.*

El Juez Asociado Sr. MacLeary, emitió la opinión del tribunal.

La cuestión que debe considerarse en el presente caso es la relativa al verdadero sentido e interpretación que ha de darse a una póliza de fletamento o conocimiento. Los apelantes embarcaron en el puerto de New York con dirección a Mayagüez y por conducto de la New York & Porto Rico S. S. Co., ciertos efectos o mercaderías por valor de $2,284.38. El flete de dichas mercaderías se pagó por adelantado en New York y al llegar el vapor Coamo que conducía dichas mercaderías a la bahía de Mayagüez, los apelantes enviaron sus

lanchas al costado del buque que estaba anclado a la entrada de la bahía, y solicitaron que se les hiciera la entrega de dichas mercaderías, a lo que se negó dicha compañía de vapores, entregándolas al apelado junto con otras mercancías, las que fueron descargadas en el muelle. por medio de ancones, cobrándose a los apelantes el precio del desembarque y arrimo al muelle de las mismas, que ascendía a $17.98. Los apelantes se negaron a pagar dicha suma y al negarse la Dock & Shipping Co. a entregar dichas mercaderías, se estableció una demanda contra dicha compañía en reclamación de dichas mercaderías y por los daños y perjuicios que se ocasionaron a los demandantes con motivo de la retención. Desde los primeros momentos de la controversia las partes hicieron una estipulación para que se entregaran, sin perjuicio de que los derechos de las partes quedaran sometidos a la resolución de la corte. El embarque de dichas mercaderías se hizo por medio de siete conocimientos, cuyo contenido y efecto eran semejantes, apareciendo en impresos iguales, y conteniendo cada uno la misma cláusula 5ª., que es la que tiene importancia en este caso y que aparece redactada como sigue:

"Que el barco debe proceder a la descarga inmediatamente después de su llegada, descargando seguidamente los efectos o mercancías, los que deben recibirse en el sitio del barco en que se descargan las mercancías, terminando entonces la responsabilidad del conductor, debiendo el consignatario recibir dichas mercaderías al costado del barco, tan pronto como el buque está listo para descargar, y el agente o capitán de dicho barco *tendrá el derecho de opción* para contratar ancones o lanchas en el puerto de desembarque para descargar y arrimar todas o parte de las mercancías por cuenta y riesgo del embarcador, dueño o consignatario de las mismas; y si las mercancías no fueran sacadas del barco por el consignatario tan pronto como las mismas están listas al descargar el buque, cesará entonces toda la responsabilidad del barco o cargador, quedando en libertad el agente o capitán para desembarcar y arrimar todas o parte de las mercancías, poniéndolas en ancones, lanchas o depósito, o dejarlas almacenadas, en el muelle de la compañía u otro cualquiera, o en un almacén público, o que permanezcan donde fueron desembarcadas según dispongan las autoridades del puerto, o de acuerdo con la costumbre del lugar, a

cuenta y riesgo del embarcador, dueño o consignatario, y entonces se considerará que se ha hecho la entrega de los efectos, conservando el barco o portador un derecho de retención sobre las mercancías hasta que se verifique el pago de todos los gastos y derechos en que se haya incurrido, quedando las mismas sujetas al pago de los derechos de almacenaje y de depósito en el muelle. Si por no conseguirse o ser imposible obtener ancones, o por otros motivos que no se deban a la falta del portador, a juicio del capitán resulta probable que el barco tenga que demorarse por más tiempo que el empleado en circunstancias ordinarias para descargar las mercaderías que están a su bordo, o si no se encontrasen los efectos, el barco estará libre para continuar su viaje con todas o cualquiera parte de las mercaderías que quedan a su bordo, entregándolas al regresar de su viaje o para remitirlas a su destino desde cualquier puerto que sea conveniente en donde pueda tocar el vapor, a cuenta y riesgo del consignatario, no estando la compañía sujeta a responsabilidad alguna por daños y perjuicios o pérdida que pueda sobrevenir. Se estipula y conviene además, que si el barco descarga en el muelle, el consignatario deberá recibir los efectos en dicho muelle, y si la compañía ha entregado las mercancías a algún otro portador para ser llevadas a su destino, cesará toda la responsabilidad de dicha compañía por el hecho de la entrega.''

La primer cuestión que surge en la interpretación de esta cláusula, contenida en el conocimiento, se encuentra transcrita en la tercera especificación de errores a que hacen referencia los apelantes en su alegato y que sustancialmente es como sigue:

''3º. Que la corte erró al resolver y fallar que el buque, o sus agentes tenían opción, privilegio o derecho a contratar lanchas o ancones para el desembarque de las mercaderías por cuenta del receptor, aun cuando éste estuviera listo y dispuesto a tomarlas y recibirlas al costado del buque al comenzar éste la descarga.''

En la interpretación de esta cláusula del conocimiento, se nos ha citado como autoridad una sentencia de la Corte Federal de Puerto Rico dictada en 30 de marzo último, en el caso de *Pagán Lopez & Co.* v. *Fritze Lundt & Co., Sucs.*, la que se encuentra incluída en los autos de este caso a los efectos procedentes, o para que sea tomada en consideración en lo que fuere de aplicación. Los argumentos acerca de los cuales

se ha llamado nuestra atención en la sentencia que ha sido
citada, serán considerados en lo que procedan y nos alegramos
de poder contar con esa ayuda en la investigación de cues-
tiones difíciles, por lo que hemos considerado debidamente
las razones expresadas en la sentencia de dicha corte en la
que se dice:

"Que la verdadera interpretación y significado de dicha cláusula
5ª. confiere a los demandados como agentes de los dueños del barco,
o al capitán de los barcos en los que ha de efectuarse el transporte de
mercaderías de acuerdo con tales conocimientos o pólizas de fleta-
mentos, el derecho de optar al llegar a cualquier puerto, bien por
obtener ancones u otras embarcaciones para el transporte de los
géneros del barco a tierra, o bien por entregarlos en el sitio en donde
se descargan en el barco; que cualquiera otra interpretación que se
haga tratándose de mercaderías de distintas clases que vayan con-
signadas a un gran número de diferentes personas, sería incompatible
con la obligación que tiene el portador de suministrar iguales como-
didades a todos los patronos."

De una mera lectura de la referida cláusula pudiera con-
siderarse que esta interpretación es correcta. En la primera
parte de las estipulaciones que han sido citadas se expresa
que el agente o capitán del buque tiene la preferencia para
contratar ancones o lanchas en el puerto en que han de des-
cargarse los efectos para poner en tierra las mercaderías
cuenta y riesgo del cargador, dueño o consignatario. Pero
nosotros no podemos escoger una sola parte del contrato e
interpretarlo en el significado que tenga esa parte solamente,
sino que debemos tomar todo el documento y considerarlo en
conjunto, para llegar a conocer la intención de las partes al
hacer el contrato que es el que ha de regir nuestra decisión
en este caso. (2 Parson on Contracts, 501, 8th Ed.; *Lindley*
v. *Groof et al.*, 37 Minn., 338; *Field* v. *Leiter*, 118 Ill., 26 y 27.)
También se expresa en el conocimiento que las mercaderías
han de tomarse en el mismo sitio donde se descargan en el
barco, terminando allí la responsabilidad del cargador, de-
biendo dichas mercaderías ser recibidas al costado del buque.

por el consignatario tan pronto el barco está listo para descargarlas.   Se estipula además en dicha cláusula contenida en el conocimiento, que si el consignatario no saca del barco las mercaderías directamente cuando les llega su turno al descargarse el vapor, termina entonces toda responsabilidad por parte del barco o cargador y el agente o capitán del barco tendrá la libertad de echar a tierra y descargar las mercaderías, ya poniéndolas en lanchones o ancones, o. depositándolas en almacenes, o en un muelle de la compañía, u otro cualquiera, o en un almacén público, o dejar que permanezcan en el sitio en que fueron descargadas según las instrucciones que se reciban de las autoridades del puerto, o con arreglo a la costumbre en tales casos, en donde se considerará que han sido entregadas dichas mercaderías; todo esto se hará por cuenta y riesgo del cargador, dueño o consignatario.

Resulta con bastante claridad de dicho contrato, o en el mismo más bien se expresa que el dueño de las mercaderías o el consignatario tiene el derecho de recibir las mismas del cargador en el sitio en donde se descargan en el barco, y al costado del mismo, tan pronto como el barco esté listo para el descargue, conservando el capitán o agente del barco el derecho de contratar ancones para descargarlas si el consignatario no las saca del barco tan pronto como les toca el turno para el desembarque.   Debe interpretarse el contrato de tal modo que cada una de las partes contratantes conserve los derechos que han sido estipulados por las mismas en el propio contrato.   Para que el capitán o agente del barco tenga la preferencia de alquilar ancones para sacar las mercaderías, cuando el dueño de dichas mercaderías está presente al costado del buque con su misma lancha, preparado para recibirlas tan pronto como les toque su turno al descargar el barco y está listo para sacarlas del sitio de descarga del barco, sería anular toda la parte del contrato en que se concede algún derecho al consignatario.   El objetivo de todas las reglas de interpretación es descubrir y poner en práctica la verdadera intención de los contratantes al otorgar el contrato que se

presenta para ser interpretado. (*Dist. Tp. of City of D.* v. *City of Dubuque,* 7 Iowa, 262; Beal's Cardinal Rules, pp. 60, 121, 207, 309 y los casos allí citados.)    No puede considerarse que haya sido la intención de las partes contratantes el anular de ese modo el contrato y el conocimiento no debe ser interpretado en ese sentido.    No se trató de que el capitán o agente del barco pusiera en ejercicio la opción que se reservaba en caso en que el. dueño o consignatario de las mercaderías dejara de venir al costado del barco y estuviera listo para recibir las mercaderías y en el punto en que las mismas se descargan en el barco cuando llegara el turno, y estuviera el barco procediendo a la descarga.    El consignatario de las mercaderías no tiene derecho a demorar el barco con motivo de la descarga y debe recibir sus mercaderías cuando llega el momento y están listas para ser entregadas al costado del barco y en el sitio donde se hace la descarga.    Pero cuando él está allí listo y pide que se le entreguen sus mercaderías, los oficiales del barco no tienen derecho alguno para entregárselas a ninguna otra persona que las lleve a tierra y por cuenta del dueño de las mismas.    Esta interpretación del conocimiento es razonable y justa para ambas partes y en ella está contenida la intención que tuvieron las partes al hacer el contrato, por consiguiente, debemos declarar que la tercera especificación de error está bien fundada y que este error invade y gobierna completamente la decisión y sentencia que ha sido dictada por la corte sentenciadora.    Considerando así el conocimiento y habiendo encontrado que la corte sentenciadora ha incurrido en un error fundamental en la interpretación que ha dado al contrato en el cual se fundan los derechos que han sido alegados por ambas partes, se hace innecesario considerar los demás errores que han sido señalados por el apelante por ser inmateriales.    De una debida interpretación de la cláusula 5ª. contenida en dicho conocimiento, resulta que debe revocarse la sentencia dictada por la corte sentenciadora, devolviéndose el caso a la corte de su origen para que proceda a dictar otra sentencia de acuerdo con los principios estable-

cidos en esta opinión y a resolver sobre los daños y perjuicios reclamados por los demandantes por los méritos de las pruebas practicadas en el pleito.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.