CERVECERÍA CORONA, INC., demandante y recurrida, *v.* COMMONWEALTH INSURANCE COMPANY, representada por ASOCIACIÓN DE GARANTÍA DE SEGUROS MISCELÁNEOS y COMISIONADO DE SEGUROS, demandada y recurrente.

*Número:* R-83-418    *Resuelto:* 26 de abril de 1984

*Carlos Rivera Vicente* y *R. Adolfo De Castro*, de *Cancio, Nadal & Rivera*, abogados de la recurrente; *Jorge R. Dávila*, abogado de la recurrida.

PER CURIAM: El 8 de febrero de 1977 ocurrió un incendio en la Puerto Rico Glass Warehouse donde se encontraba almacenado alrededor del 35% de las existencias del inventario total de la Cervecería Corona en Puerto Rico. La pérdida por razón de incendio fue $305,483.80, los cuales Corona reclamó a su aseguradora Commonwealth Insurance Company.(¹) Ésta negó responsabilidad alegando que Corona incumplió con su obligación de notificarle la localización y valor de los bienes asegurados, a tenor con las cláusulas 11 y 12 del contrato. En demanda en cobro de dinero el Tribunal Superior, Sala de San Juan, impuso responsabilidad a la aseguradora. Acordamos revisar.

I

El contrato de seguro vigente al momento del siniestro contenía entre sus cláusulas una denominada "Value Reporting Clause". Disponía:

---

(¹) Commonwealth advino insolvente, pasando a ser sus sucesoras en derecho el Comisionado de Seguros de Puerto Rico y la Asociación de Garantía de Seguros de Todas Clases Excepto de Vida, Incapacidad y Salud (AGSM). Esta última, hasta la cantidad de $150,000, establecida como límite estatutario de su obligación bajo el Art. 38.090 del Código de Seguros, 26 L.P.R.A. sec. 3809.

11. Cláusula de Informe de Valores — El asegurado deberá informar a esta compañía, no más tarde de 30 días después del último día de cada mes, la localización exacta de cada propiedad cubierta, el valor total de los bienes allí localizados, todos los seguros específicos a esa propiedad al último día de cada mes. Al momento de cualquier pérdida, *si el asegurado falla en suministrar a esta Compañía los informes de bienes aquí asegurados, esta póliza, sujeta a las demás provisiones y estipulaciones, sólo incluirá las localidades, y por no más de las cantidades incluidas en el último informe de valores. . . .* (Énfasis nuestro.)

En cumplimiento de esta cláusula, con anterioridad al incendio, Corona sometió a la Commonwealth informes mensuales de sus inventarios de mercancía, materiales y suministros localizados en sus almacenes, correspondientes a los meses de agosto, septiembre, octubre y el último radicado en noviembre de 1976. Sin embargo, durante la vigencia de dos pólizas idénticas consecutivas —la original comenzaba el 11 de julio de 1975 (19 meses antes del incendio) y la que lo renovó el 11 de julio de 1976— Corona nunca divulgó la existencia del almacén conocido como Puerto Rico Glass Warehouse ni el inventario allí almacenado.

Es ocho (8) días después que presenta, en los informes correspondientes a diciembre de 1976 y enero de 1977, su localización y los valores que poseía en el almacén incendiado. Posteriormente somete a la aseguradora informes corregidos desde julio de 1976 hasta agosto de 1977.

La cláusula en controversia en este caso, denominada corrientemente como "Monthly Reporting Clause", nos es descrita así:

Seguro de informes mensuales, también llamado provisional o seguro flotante, es un mecanismo por el cual la cantidad del seguro bajo la póliza fluctúa con el valor de las mercancías variables en existencia. La póliza contiene el requisito de que el asegurado mantenga un récord diario del valor de la propiedad cubierta por la póliza, aun cuando éste fluctúe en cantidad de día a día, y al final de cada mes se envía un informe a la compañía aseguradora del cual el promedio del valor en

riesgo es calculado y la prima es pagada por la cantidad que sea determinada. En la práctica, una prima provisional es pagada por adelantado y al final del período a computarse, la prima es ajustada entre las partes, dependiendo del valor exacto que ha estado en riesgo durante ese período. Es, obviamente, de este requisito de la póliza que el nombre de seguro de informes mensuales es derivado. (Traducción nuestra.) Anotación, 13 A.L.R.2d 713, 714 (1950).

Señalándonos más adelante en la pág. 718:

La obligación principal del asegurado bajo la póliza de informes mensuales es la de informar a la aseguradora a más tardar de 30 días, a partir del último día de cada mes, el valor exacto de la propiedad cubierta bajo la póliza, su posición exacta, y todos los demás seguros que posea. Acorde con este requisito, parece estar bien establecido que, como regla general, *un asegurado bajo la póliza de informes mensuales tiene derecho a recobrar sólo a base de su informe mensual sometido a tiempo.* (Énfasis y traducción nuestros.)

Corona reconoce que incumplió con esta cláusula. No obstante fundamenta su reclamo en: (1) que la cláusula núm. 5, en el espacio provisto para señalar la localización y descripción de los locales cubiertos, se escribió a maquinilla *ANYWHERE WITHIN THE COMMONWEALTH OF PUERTO RICO*; y (2) que incurrió en un error de buena fe y, por lo tanto, subsanable después de la pérdida.[2] Esta tesis, que tuvo cabida ante el tribunal de instancia al considerar que la cláusula añadida a maquinilla era conflictiva con la de informes mensuales, no nos convence.

▮ Primeramente, todo contrato debe ser interpretado tomando sus cláusulas de manera integral y no aisladamente, buscando su verdadero sentido, atendiendo a la

---

[2] Se basa en la disposición núm. 10 de las condiciones especiales: El informe mensual del total de los valores es con el único propósito del cómputo de la prima, y ningún error u omisión en el informe mensual operará en perjuicio del asegurado, pero cualquier error u omisión deberá ser corregido por el asegurado tan pronto sea descubierto.

interpretación de unas claúsulas con relación a otras. (³) Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125; Art. 1237 del Código Civil, 31 L.P.R.A. sec. 3475; *P. López & Co.* v. *Mayagüez D. & S. Co.*, 18 D.P.R. 396 (1912); *Caballero* v. *Kogan,* 73 D.P.R. 666 (1952); *San Miguel Fertil. Corp.* v. *P.R. Drydock,* 94 D.P.R. 424 (1967); *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 D.P.R. 739 (1964).

■ Segundo, hemos visto que la cláusula de informes mensuales tiene como propósito asegurar unos bienes fluctuantes a través de notificaciones periódicas en que se informe a la aseguradora: (1) la localización exacta de la propiedad cubierta; (2) el valor total del inventario en dicha propiedad; y (3) los seguros adicionales que cubren la misma. 8 Couch on Insurance 201 Sec. 37:1204 (1961). Su valor y eficacia es fundamental. La inestabilidad del bien asegurado tiene como resultado la incertidumbre de lo que se está asegurando y la contingencia que el asegurado está corriendo al trasladar del propietario y asumir ella el riesgo por pérdida.

■ Tercero, el contrato de seguros no es uno ajeno a las normas básicas del derecho de obligaciones. Si se pacta asegurar unos bienes con el deber expreso de informar lo que se está asegurando —con relación y debido a ello puede variar la prima; y no se cumple e informa— no puede reclamarse responsabilidad a quien desconocía que estaba asumiendo el riesgo de los bienes perdidos.

■ Este tipo de contrato atípico donde existe una cláusula que condiciona la responsabilidad a la exigencia de informar es perfectamente válido y exigible. Así lo resolvimos en *Homar, Colom & Co* v. *British Amer. Ass. Co.,* 38 D.P.R. 790, 796 (1928), ante una cláusula parecida de libro e inventarios en cajas de caudales o *iron-safe clause* igualmente

---

(³) No estamos ante un contrato en que existan cláusulas obscuras a ser interpretadas contra la parte que redactó el contrato. *National City Bank* v. *Llonín,* 41 D.P.R. 163 (1930); *Cáez* v. *U.S. Casualty Co.*, 80 D.P.R. 754 (1958).

dirigida a evitar el fraude, que implica "a manera de pena civil, la ineficacia del contrato como consecuencia de su inobservancia".

## II

Contra esta decisión no milita el haber Commonwealth asumido el riesgo por las mercancías que la asegurada poseyera en Puerto Rico. Obsérvese que la prima —causa del contrato para la aseguradora— no era fija. El riesgo dependía de otras condiciones. La prima era computada con relación a los informes mensuales que disponía la cláusula 13 del contrato, indicativo de que variaba con relación a los bienes existentes. Obviamente al variar el riesgo, también varía la prima.

■ En este caso la causa —la protección de unos bienes— variaba, por la misma naturaleza de bienes comerciales en el mercado. Los informes mensuales venían a delimitar la esfera de la causa. Del contrato no conformar en determinado momento un elemento de la causa, la misma sería inexistente para efectos del contrato, pues, para ese bien específico (parte de la causa) no existiría ni objeto (por no pagarse una prima, que es la causa de la aseguradora)[4] ni consentimiento (pues la otra parte desconoce su existencia, y para que exista un consentimiento válido éste tiene que estar fundado en conocimiento).[5] Véase *S. J. Credit, Inc.* v. *Ramírez,* 113 D.P.R. 181 (1982).

■ Evidentemente la cláusula número 5, *ANYWHERE WITHIN THE COMMONWEALTH OF PUERTO RICO,*

---

[4] "Todo el que consiente en obligarse hacia otro, lo hace por la consideración de un fin que se propone alcanzar por medio de esta obligación. La obligación de quien contrae está siempre y necesariamente dominada por el deseo de alcanzar un fin que él ha previsto. Obligarse sin tendencia a un fin es acto propio de locos." (Escolio omitido.) H. Capitant, *De la causa de las obligaciones,* Madrid, Ed. Góngora, 1922, pág. 17.

[5] En ese contrato aleatorio esa ausencia de causa (de la aseguradora) no puede ser suplida posteriormente —como determinó el tribunal de instancia— al dictar que se pagaran $2,156.80 de prima después del incendio.

debe ser interpretada en su sentido más cónsono con la totalidad del contrato. Comprendía cualquier sitio dentro de los límites territoriales de Puerto Rico, pero el lugar envuelto tenía que ser informado mensualmente. Resolver lo contrario sería ilógico. "Los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando dicho contrato es legal y válido y no contiene vicio alguno." *Olazábal* v. *U.S. Fidelity, Etc.*, 103 D.P.R. 448, 462 (1975). El incumplimiento por una parte de las cláusulas de un contrato, releva a la otra de toda su responsabilidad por las obligaciones en él contraídas. *Portela* v. *Porto Rican-Amer. Tob. Co.*, 4 D.P.R. 30 (1903). Argumentar que la cláusula número 10, ya citada, subsanaría una omisión tan fundamental del asegurado, es un vano ejercicio de literalidad. *Merle* v. *West Bend Co.*, 97 D.P.R. 403 (1969); *San Miguel Fertil. Corp.* v. *P.R. Drydock*, supra; *P. López & Co.* v. *Mayagüez D. & S. Co.*, supra. Claramente esta disposición va dirigida a omisiones cometidas, aun cuando se ha desplegado una razonable diligencia. No podría cubrir situaciones como las de autos de negligencia inexcusable. Ello menoscabaría el propósito de la cláusula en controversia de evitar el fraude.

Indudablemente la omisión de Corona fue cometida. ¿Podría ella exigir el pago del seguro bajo el supuesto de que fue un error cometido de buena fe? La buena fe se presume. Quien reclama la mala fe debe probarla. Aquí la aseguradora lo hizo al demostrar que no se le había informado durante 19 meses la existencia de un almacén donde se guardaba el 35% de las existencias de la cervecería. "El contenido de la norma de que a nadie es lícito ir contra los propios actos tiene fundamento y raíz en el principio general de Derecho que ordena proceder de buena fe en la vida jurídica. La conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida." *Int. General Electric* v. *Concrete Builders*, 104 D.P.R. 871, 877 (1976).

Por los fundamentos expuestos, *se revoca la sentencia del tribunal de instancia y se declara sin lugar la demanda.*

El Juez Asociado Señor Díaz Cruz no intervino.