Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ERNESTO DEL VALLE RIVERA; WANDA E. PÉREZ GONZÁLEZ<br><br>Apelantes<br><br>V.<br><br>TOMÁS SOTO MUÑIZ, SU ESPOSA FULANA DE TAL, POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ELLOS; EDDIE N. SOTO BONET, SU ESPOSA SUTANA DE TAL POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ELLOS<br><br>Apelados | KLAN202400506 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.: AG2022CV01580<br><br>Sobre: Incumplimiento de Contrato, Cobro de Dinero; Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 16 de diciembre de 2024.

El 23 de mayo de 2024, compareció ante este Tribunal de Apelaciones, Ernesto Del Valle Rivera y Wanda E. Pérez González, (en adelante y en conjunto, parte apelante), mediante recurso de *Apelación*. En el mismo nos solicita que revisemos la *Sentencia* emitida el 1 de abril de 2024 y notificada el 2 de abril de 2024, por el Tribunal de Primera Instancia. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Demanda* presentada el 21 de octubre de 2022 por la parte apelante. Asimismo, desestimó la *Reconvención* instada el 26 de enero de 2023 por Tomás Soto Muñiz, su esposa Fulana de Tal por sí y en representación de la Sociedad Legal de Gananciales por ellos compuesta; Eddie N. Soto Bonet, su

Número Identificador

SEN2024 _____

esposa Sutana de Tal por sí y en representación de la Sociedad Legal de Gananciales por ellos compuesta (en adelante y en conjunto parte apelada).

Por los fundamentos que expondremos a continuación, se revoca en parte la *Sentencia* apelada y se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo aquí resuelto.

**I**

El caso que nos ocupa dio inicio el 21 de octubre de 2022 mediante la presentación de una *Demanda* por incumplimiento de contrato; cobro de dinero y daños y perjuicios instada por la parte apelante en contra de la parte apelada.

En apretada síntesis, en la *Demanda* se alegó que, el 2 de septiembre de 2021, la parte apelante contrató con la parte apelada, haciendo negocios como EM Terminaciones, para que realizara trabajos de construcción en el primer nivel de dos apartamentos tipo estudio, almacén y una biblioteca en una residencia ubicada en la Carretera 110, Km. 10.0, Int. Barrio Maleza Alta, en Aguadilla, Puerto Rico. Los trabajos a realizarse incluían, la construcción en hormigón armado y bloques de un pozo séptico con recibidor, entradas frontales y traseras, aceras y dos (2) jacuzzis en hormigón. El precio pactado por tales obras fue de $75,000.00, de los cuales la parte apelada requirió un adelanto de $25,000.00.

Alegó la parte apelante que las obras comenzaron el 6 de septiembre de 2021. Acotó que, el 28 de septiembre de 2021, la parte apelada le requirió otro adelanto de $20,000.00. Respecto a dicha solicitud, la parte apelante indicó que debido a que la parte apelada no había adelantado los trabajos, según lo esperado, solo le entregaron $10,000.00. La parte apelante alegó que, el 23 de enero de 2022, le efectuó un tercer pago a la parte apelada en la suma de $7,000.00. Por consiguiente, para finales del mes de enero de 2022,

la parte apelada había recibido de parte de la parte apelante la suma de $42,000.00, sin que los trabajos acordados hubiesen progresado. Ello, a pesar de que ya había transcurrido el término de 90 días pactados para la culminación de la obra. La parte apelante añadió que, en el mes de marzo de 2022, los trabajos eran realizados de manera esporádica y deficiente. Acotó que, a finales del mes de marzo de 2022, la parte apelada abandonó la obra, ocasionándole pérdidas económicas a la parte apelante y obligándola a contratar a un inspector que evaluara las condiciones de los trabajos realizados. Adujo que, el mencionado inspector de la obra concluyó que el trabajo había sido completado en un treinta y cinco punto seis por ciento (35.6%). A juicio del inspector, el valor de las obras realizadas equivale a $26,714.38, a pesar de que la parte apelante le había adelantado a la parte apelada pagos en la suma de $42,000.00.

La parte apelante le reclamó en su *Demanda* a la parte apelada que, habida cuenta de la obra fue realizada de forma defectuosa y de las cantidades desembolsadas, alegadamente en exceso, requirió la devolución de $15,285.62. Además, la parte apelante le requirió una compensación en la suma de $40,000.00 por el costo adicional de las obras que el incumplimiento de la parte apelada le ocasionó a la parte apelante. Reclamó, además, la suma de $12,000.00 mensuales por concepto de las demoras injustificadas en la ejecución de la obra. Por último, reclamó daños y perjuicios ante el incumplimiento y la negligencia de la parte apelada al ejecutar las obras, lo cual estimó en la suma de $108,000.00, suma que alegó aumenta a razón de $12,000.00 mensuales hasta que la parte apelante culmine las obras para las cuales había contratado a la parte apelada.

El 26 de enero de 2023, la parte apelada presentó ante el foro primario *Contestación a Demanda,* en la que negó ciertas alegaciones en todo o en parte y aceptó otras y levantó sendas

defensas afirmativas. Simultáneamente, incoó *Reconvención*. En esta última, entre otras alegaciones, acotó que, recibió una Orden de Paralización de la Oficina de Permisos del Municipio de Aguadilla. Adujo que, la parte apelante omitió divulgarle que la construcción era ilegal y que estaba en contra del ordenamiento estatal y municipal. Añadió, entre otros argumentos que, el daño de la parte apelante era autoinfligido y que, además, hizo múltiples órdenes de cambio provocando una dilación permisible y consentida de la fecha de entrega del proyecto. Alegó que, la parte apelante incumplió el contrato al no pagar materiales necesarios para completar la obra, lo que provocó que la parte apelada tuviera que asumir los costos del proyecto de su propio pecunio. Alegó que, los costos no cubiertos por la parte apelante ascienden a $57,000.00.

El 6 de febrero de 2023, la parte apelante interpuso ante el foro primario *Contestación a Reconvención*, en la que, en esencia, negó las alegaciones y levantó varias defensas afirmativas. Puntualizó que, la redacción del contrato recayó en la parte apelada, al ser redactado a puño y letra, particularmente, por el señor Soto Bonet. Indicó, además que, tramitó y obtuvo el Permiso 2021-407203-PCOC-019917, que autorizaba la construcción relacionada con el contrato de obras entre las partes y agregó que nunca hubo paralización de la obra por falta de permiso de construcción. Imputó a la parte apelada el abandono de la obra.

Acaecidas varias incidencias procesales, innecesarias pormenorizar, el 5 de mayo de 2023, notificada el día 9 del mismo mes y año, el foro *a quo* dictó *Sentencia Parcial* mediante la cual decretó el archivo con perjuicio de la reclamación a favor de Maraliz González Muñiz (esposa del señor Soto Bonet).

El juicio en su fondo se llevó a cabo los días 16, 18 y 19 de enero de 2024. Subsiguientemente, el 1 de abril de 2024, notificado al día siguiente, el Tribunal de Primera Instancia, Sala Superior de

Aguadilla, emitió el dictamen apelado mediante el cual declaró No Ha Lugar la *Demanda*, así como la *Reconvención*.

En desacuerdo con lo determinado por el foro *a quo*, el 7 de abril de 2024, la parte apelante presentó *Moción de Reconsideración*. El 23 de abril de 2024, notificada ese mismo día, la misma fue declarada No Ha Lugar por el Tribunal de Primera Instancia.

Aún inconforme, la parte apelante acudió ante este foro revisor mediante recurso de *Apelación* y esgrimió el siguiente señalamiento de error:

> Erró el TPI en la apreciación de la prueba y en la aplicación del derecho, al determinar que se dieron por cumplidas las prestaciones y contraprestaciones por el trabajo realizado, cuando la prueba demostr[ó] un patente incumplimiento de contrato de obra por los apelados, existiendo un patente conflicto entre las determinaciones de hechos, la prueba testifical y documental.

El 28 de mayo de 2024, este Tribunal emitió una *Resolución* en la cual le requerimos a la parte apelante que nos indicara el método de prueba oral que se proponía utilizar y dispusimos los términos para que las partes presentaran sus alegatos suplementarios.

El 31 de mayo de 2024, la parte apelante presentó su *Moción Acreditando Método de Reproducción de Prueba Oral* en donde estableció la transcripción como el método seleccionado sobre la totalidad de la prueba testifical desfilada por las partes durante los días 16 y 18 de enero de 2024.

Luego de varias incidencias procesales, el 12 de agosto de 2024, la parte apelante presentó su *Moción en Cumplimiento de Orden* y sometieron la transcripción de la prueba oral.

El 17 de septiembre de 2024, la parte apelada presentó su *Moción Informativa Estipulando Transcripción de Prueba Oral*.

El 10 de octubre de 2024, la parte apelante presentó su *Alegato Suplementario*, en el cual, apoyado en la transcripción de la

prueba oral, reiteró su petición de revocación de la *Sentencia*. En apretada síntesis, argumentaron sobre el incumplimiento de la parte apelada respecto a la realización de la obra en el tiempo acordado para culminar la misma. Reclamó que, a pesar de los adelantos de dinero recibidos, la parte apelada renunció a continuar la obra, dejando los trabajos inconclusos. Además, insistió en su reclamación por daños sufridos ocasionados por el incumplimiento de la parte apelada.

El 30 de octubre de 2024, compareció ante este foro revisor la parte apelada, mediante su *Alegato*, en el que argumentó a favor de la confirmación del dictamen apelado.

Con el beneficio de la comparecencia de las partes procedemos a exponer el derecho atinente a la controversia que nos atañe.

**II**

**A. *Deferencia Judicial***

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Pueblo v. Pérez Núñez*, 208 DPR 511, 529 (2022); *Arguello v. Arguello*, 155 DPR 62 (2001); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219, (2021).

No obstante, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. *Pueblo v. Pérez Núñez*, supra. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de

primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Pueblo v. Pérez Núñez,* supra; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *S.L.G. Rivera Carrasquillo v. A.A.A.*, supra, pág. 356.

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

Se podrá preterir de la normativa deferencial cuando un análisis integral de la prueba así lo justifique. *Pueblo v. Pérez Núñez*, supra. El Tribunal Supremo ha reiterado que, el juzgador de hechos puede equivocarse en la apreciación de la prueba que realiza. *Íd.* Es por lo que, ha dispuesto que, "los foros apelativos podrán intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas". *Íd.*

Finalmente, respecto a la evaluación de prueba documental y pericial, los foros revisores nos encontramos en igual posición que los foros de primera instancia. *Albino v. Ángel Martínez, Inc.*, 171

DPR 457, 487 (2007). Nos encontramos facultados para evaluar de forma independiente la prueba documental y pericial que obre del expediente, pudiendo así adoptar nuestro propio criterio. *Serrano Muñoz v. Auxilio Mutuo*, supra, pág. 777.

**B. *Teoría General de los Contratos***

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo para producirlas. Art. 1063 del Código Civil de 2020, 31 LPRA sec. 8984; *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Los contratos se perfeccionan cuando median el objeto, consentimiento y causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9771. El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751.

En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes. *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994). No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753.[1]

Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1233 del Código Civil de 2020, 31 LPRA

---

[1] El Art. 1207 del derogado Código Civil de 1930, 31 LPRA sec. 9512, disponía que, los contratantes podían establecer los pactos, cláusulas y condiciones que tuvieran por conveniente, siempre que no fueren contrarios a las leyes, a la moral, ni al orden público.

sec. 9754. Los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 627 (1997).

## C. *Contrato de Arrendamiento de Obras*

Según nuestro Código Civil vigente, "por el contrato de obra, el contratista se obliga, sin estar subordinado al comitente, a realizar una obra material o intelectual por el pago de un precio". Art. 1367 del Código Civil, ed. 2020, 31 LPRA sec. 10251. Nuestro Máximo Foro ha definido el contrato de arrendamiento de obras como "[e]sencialmente uno de trabajo, mediante el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ellos. (…); *Master Concrete Corp. v. Fraya, S.E.*, 152 DPR 616, 623-624 (2000).[2]

El contrato de obra es uno de carácter consensual, bilateral y oneroso, y tiene como elementos característicos la obra a realizarse y el precio. *Constructora Bauzá, Inc. v. García López*, 129 DPR 579, 592 (1991), citando a M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Jaén, Ed. Rev. Der. Privado, 1980, T., Vol. 1, pág. 98; C. Berríos Rojas, *Apuntes sobre el contrato de construcción*, XIII (Núm. 3) Rev. Jur. U.I.A. 461, 463 (1979). Mediante este contrato, el contratista se obliga a realizar y a entregar la obra según lo pactado, mientras que el dueño de la obra se obliga a pagar el precio de esta en la forma, en la cuantía y en el tiempo convenido. *Master Concrete Corp. v. Fraya, SE*, supra, pág. 624; *Constructora Bauzá v. García López*, supra, pág. 592.

---

[2] *Master Concrete Corp. v. Fraya, S.E.*, supra, hace referencia al Art. 1434 del derogado Código Civil de 1930, 31 LPRA ant. sec. 4013 que encuentra su equivalente en el Art. 1367 del Código Civil de 2020, 31 LPRA sec. 10251.

El Tribunal Supremo ha expresado que "[e]l incumplimiento total o parcial de las prestaciones a las que se han obligado las partes sujetará las mismas a las sanciones que a esos efectos provee el Código Civil". Es decir, cuando una de las partes incumpla de forma total o parcial lo pactado, tal incumplimiento estará sujeto a las sanciones dispuestas por el Código Civil. *Id.*

Según es sabido, el contrato, cuando es legal, válido y carente de vicios del consentimiento es la ley entre las partes y debe cumplirse a tenor de este. Artículo 1233 del Código Civil de 2020, 31 LPRA. sec. 9754; *Constructora Bauzá v. García López*, supra, pág. 593 citando a *Cervecería Corona v. Commonwealth Ins. Co.*, 115 DPR 345 (1984). Cuando se perfecciona el contrato de arrendamiento, las partes quedan obligadas por lo expresamente pactado, y, si una de las partes incurre en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones, responderá por los daños y perjuicios causados. Arts. 1237 y 1158 del Código Civil de 2020, 31 LPRA seccs. 9771 y 9303; *Master Concrete Corp. v. Fraya, SE*, supra, págs. 624-625. Según ha sido dispuesto, ante el incumplimiento de una parte, la parte perjudicada podrá exigir el cumplimiento de la obligación en la forma específicamente debida o la resolución de este; solicitar el cumplimiento mediante la obtención del equivalente económico de la prestación debida y, a la vez, pedir la indemnización de daños y perjuicios resultantes de la repercusión del incumplimiento en su patrimonio. *Íd.* citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, 4ta ed., Barcelona, Ed. Bosch, 1988, T. IV, Vol. 2, pág. 409. Cuando el contratista cumple de forma defectuosa su obligación, no obstante, ser la obra útil para su destino, se le permite al dueño esgrimir la *exceptio non rite adimpleti contractus* y solicitar una reducción del precio proporcional a los vicios. *Íd.* citando a Del Arco y Pons, *op. cit.*, págs. 41–43.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla y resolver el caso ante nuestra consideración.

**III**

En su único señalamiento de error, la parte apelante arguye que, erró el Tribunal de Primera Instancia en su apreciación de la prueba y en la aplicación del derecho al determinar que se dieron por cumplidas las prestaciones y contraprestaciones por el trabajo realizado, cuando la prueba demostró un patente incumplimiento de contrato de obra por la parte apelada, existiendo un patente conflicto entre las determinaciones de hechos, la prueba testifical y documental.

En el ejercicio de nuestra función revisora, procedimos a examinar concienzuda y minuciosamente la transcripción de la prueba oral y a examinar las determinaciones de hechos emitidas por el Juzgador de primera instancia al palio de esta.  Veamos.

En la *Sentencia* apelada el Tribunal de Primera Instancia, consignó las siguientes determinaciones de hechos:

1.  La demandante Wanda E. Pérez es dueña de un predio de terreno en la carretera 110, Km. 10.0 Int., Barrio Maleza Alta, Aguadilla, Puerto Rico (en adelante el predio).[3]

2.  El predio responde a los siguientes datos registrales: Finca 11,280, folio 220, tomo 270 del Registro de la Propiedad de Aguadilla.

3.  En el predio se encuentra una estructura de dos niveles en hormigón que no estaba terminada.

4.  La demandante, Wanda E. Pérez, y el co-demandante, Ernesto del Valle, no se encuentran lega[l]mente casados.[4]

5.  La demandante, Wanda E. Pérez, y el co-demandante, Ernesto del Valle contrataron para la terminación de la estructura incompleta con miras a destinarla a arrendamientos de corto plazo.[5]

---

[3] Véase, TPO, a la pág. 19.
[4] Véase, TPO, a la pág. 18.
[5] Véase, TPO, págs. 20 y 46.

6. Los demandantes pactaron con un contratista previo los trabajos en la planta alta de la estructura.[6]

7. Culminados los trabajos de la planta alta, los demandantes entonces contrataron con Tomás Soto Muñiz y Eddie N. Soto Bonet— padre e hijo estos— para trabajos en la planta baja de la estructura.[7]

8. Existía un permiso de construcción para los trabajos en la planta alta.[8]

9. El demandado, Eddie N. Soto, había trabajado anteriormente en labores de empañete e instalación de lozas en la planta alta.[9]

10. El demandado, Tomás Soto no había trabajado anteriormente en la estructura.[10]

11. Los trabajos en la planta baja consistían en la construcción de un piso en hormigón para dicho espacio, aceras y encintado alrededor de la estructura, unas paredes divisorias para dos cuatros (*sic*) dormitorios, una oficina, una biblioteca, almacén, dos jacuzzis, pozo sanitario debido a que la estructura no tenía uno funcional, una entrada principal y una entrada trasera.[11]

12. Estos trabajos se recogieron en un documento en manuscrito firmado por las partes el 2 de septiembre de 2021 (en adelante contrato).[12]

13. El contrato fijó un precio de $75,000 por los trabajos a completarse en 90 días laborables.[13]

14. El contrato exceptuaba trabajos de electricidad, plomería, trabajos de empañete, loza, lechada y pega.[14]

15. Los trabajos comenzaron la primera semana de septiembre de 2021, días después de la contratación.[15]

16. El demandante realizó un pago inicial de $25,000.00 a los demandados.[16]

17. Los demandados iniciaron labores y compraron material de construcción con dicho pago.[17]

---

[6] Véase, TPO, a la pág. 23.
[7] Id.
[8] Id.
[9] Véase, TPO, a la pág. 24.
[10] Véase, TPO, pág. 173.
[11] Véase, TPO, págs. 26 y 29.
[12] Véase, TPO, a la pág. 29.
[13] Véase, TPO, págs. 29, 182. Conforme surge de la página 30 de la TPO, el contrato entre las partes fue estipulado.
[14] Véase, TPO, a la pág. 78.
[15] Véase, TPO, a la pág. 31.
[16] Véase, TPO, págs. 30, 54, 93, y 182.
[17] Véase, TPO, págs. 179 y 194.

18. No existían permisos para las labores en la planta baja y dicha condición motivó a que el Municipio de Aguadilla paralizara la obra mediante documento entregado en la localidad de los trabajos y dirigida a Ernesto [D]el Valle.[18]

19. El demandado requirió un segundo pago de $20,000.00, pero el demandante solamente entregó $10,000.00 indicando que el progreso de la obra no era satisfactorio según sus criterios.[19]

20. Luego, a inicios de 2022, el demandado requirió otro pago de $10,000.00, pero el demandante admite haber entregado solamente $7,000.00, nuevamente a[m]parándose en que los trabajos no progresaban.[20]

21. En marzo de 2022, el demandado informó que no continuaría laborando la obra debido a complicaciones de salud de Tomás Soto y falta de pago.[21]

22. El demandante pactó con el Ing. Pedro García una inspección de las labores completadas en la estructura luego de la salida de los demandados.[22]

23. Posteriormente, el demandante pactó con el Sr. Melwin Karry para la terminación de las labores de construcción.[23]

24. Los trabajos de construcción se pactaron con los demandados para tener terminaciones en cemento expuesto.[24]

25. Tomás Soto sufrió un percance de salud que le impidió continuar trabajando en la obra.[25]

26. Eddie N. Soto se dedica a la instalación de lozas y no a la construcción de estructuras en general.[26]

27. **Los trabajos de construcción culminaron y no quedan, a la fecha del juicio, asuntos pendientes en esta.**

Además, el foro primario concluyó lo siguiente:

De un examen detenido de los testimonios y adjudicando la credibilidad que este ejercicio amerita, este Tribunal está convencido de que las contraprestaciones que se prometieron las partes se cumplieron a proporción. No hay base en los

---

[18] Véase, TPO, págs. 85-87, 112, 181, 183,-185.
[19] Véase, TPO, págs. 32-33, 93, y 182.
[20] Véase, TPO, págs. 34-35.
[21] Véase, TPO, págs. 60 y 100.
[22] Véase, TPO, págs. 41, 116, 42, 113-142.
[23] Véase, TPO, a la pág. 42.
[24] Véase, TPO, págs. 120-121.
[25] Véase, TPO, págs. 100-101.
[26] Véase, TPO, pág. 173.

testimonios para concluir que una parte adeuda algo a la otra.

A tenor con l[o] anteriormente expresado, este Tribunal declara NO HA LUGAR la demanda y, a su vez, declara NO HA LUGAR la reconvención, toda vez que se dan por cumplidas las prestaciones y contraprestaciones por el trabajo realizado.

Al revisar las determinaciones de hechos que fueron esbozadas por el foro primario, colegimos que, en su gran mayoría las mismas encuentran apoyo en la transcripción de la prueba oral que nos fue sometida, razón por la cual no vemos la necesidad de intervenir con las mismas.

Ahora bien, luego de un ponderado y desapasionado análisis de la *Sentencia* apelada, nos percatamos de que el foro de primera instancia no se adentró en la controversia medular ante su consideración con la profundidad que el caso amerita. Nos explicamos.

Tenemos ante nuestra consideración un caso de incumplimiento de un contrato de obra, específicamente, de un contrato de construcción. Conforme surge de la prueba desfilada, durante la ejecución del contrato en cuestión surgieron controversias entre las partes en torno a la extensión de los trabajos contratados, la realización de la obra, el monto acordado por los trabajos y el tiempo establecido contractualmente por las partes para la culminación de los dichos trabajos.

En su dictamen, el Juzgador de instancia se limitó a concluir que la obra estaba terminada sin especificar quién y cuando la terminó y sin resolver si, en efecto, hubo incumplimiento de contrato por alguna de las partes contratantes. Tampoco adjudica el foro primario, si procedían o no, los daños reclamados por razón de los atrasos o trabajos sin concluir ni si las partes se adeudan dinero como consecuencia de los eventos relacionados al contrato de construcción objeto del caso ante nuestra consideración.

**IV**

Por los fundamentos antes expuestos, se revoca en parte la *Sentencia* apelada. Consecuentemente, se devuelve el caso al foro primario para que adjudique de una manera pormenorizada todas y cada una de las alegaciones y asuntos que le fueron planteados tanto en la demanda como en la reconvención, sin despachar dichos asuntos livianamente. Esto es, a base de la prueba desfilada, deberá determinar la extensión de los trabajos contratados por las partes y adjudicar de manera específica, qué partes del contrato se cumplieron y cuales no, si procede la devolución de las prestaciones y si procede o no, la imposición de responsabilidad en daños. De así, resolverlo, deberá adjudicar las cuantías, si alguna, correspondientes a base de la fórmula dispuesta por nuestro ordenamiento respecto a la adjudicación de daños.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones